## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JARED RAPP, individually and on behalf of and all others similarly situated, | Court File No.: 12-cv-02496 (PJS/FLN) |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT** |
| GREEN TREE SERVICING, LLC, a Delaware limited liability company, GREEN TREE INSURANCE AGENCY, INC., a Minnesota corporation, ASSURANT, INC., a Delaware corporation, and AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, a Florida corporation, | |
| Defendants. | |

Plaintiff Jared Rapp ("Plaintiff"), by and through his undersigned counsel, on behalf of himself and all others similarly situated, brings the following Complaint against Defendants Green Tree Servicing, LLC ("Green Tree Servicing"), Green Tree Insurance Agency, Inc. ("Green Tree Insurance") (collectively "Green Tree" or "Green Tree Defendants"), Assurant, Inc. ("Assurant"), and American Bankers Insurance Company of Florida ("ABIC") (collectively "Assurant Defendants")("Assurant Defendants" together with "Green Tree Defendants", "Defendants") based upon information and belief and the investigation of counsel, except for information based on personal knowledge, and hereby alleges as follows:

## I.    INTRODUCTION

1.     This is a class action filed to redress injuries that Plaintiff, and a nationwide class of consumers, have suffered and will continue to suffer as a result of the practices of

Defendants relating to force-placed insurance policies.  Plaintiff and Class members allege that Defendants derive improper financial benefits by imposing force-placed hazard insurance policies on properties, some of which are already covered by homeowners insurance policies purchased by the homeowner. In addition, Green Tree is charging residential borrowers for the "cost" of procuring force-placed insurance from Defendant Assurant Inc. and its subsidiaries such as Defendant ABIC, but a portion of such "cost" is returned, transferred or paid to Green Tree and/or its related entities. Plaintiff seeks to recover damages equal to the amount of the improper and inequitable financial benefit received by Defendants and/or their affiliates as a result of this anti-consumer practice, and to rescind the future collection of amounts charged against the mortgage accounts of residential borrowers but not yet collected.

2.      Lenders require borrowers to purchase and agree to maintain hazard insurance coverage on the secured property as a condition to funding home loans. Plaintiff was required to obtain and maintain hazard insurance as a condition to his mortgage.

3.      In the event that a borrower, including Plaintiff, fails to maintain their hazard insurance policies,  upon information or belief, rather than attempt to maintain delinquent borrowers' existing policies, Defendants replace borrowers' policies with considerably more expensive policies provided by the Assurant Defendants pursuant to a contract between the Green Tree Defendants, and/or their affiliates, and the Assurant Defendants, forcing borrowers to pay for the policies by diverting the monthly mortgage payments and/or debiting the borrowers' escrow accounts. These policies are known as

"force-placed" or "lender-placed" insurances policies. Such policies provide less coverage and are substantially more costly (5 to 10 times the price) than the borrowers' original policies, which provide improper, undisclosed, and lucrative financial benefits and kickbacks to lenders/servicers and/or their affiliates, as well as to providers of force-placed insurance. Further, such policies provide unnecessary or duplicative coverage, in that they are improperly backdated to collect premiums for time periods during which the mortgagor has no risk of loss.

4.     Here, Defendants have engaged in a pattern of unlawful and unconscionable profiteering and self dealing in regards to their purchase and placement of force-placed insurance policies in bad faith.

5.     In this action, Plaintiff challenges Green Tree's practice of purchasing force-placed hazard insurance from the Assurant Defendants pursuant to agreements that return a financial benefit to any Green Tree affiliate that is unrelated to any *bona fide* interest in protecting the Lender's interest in the loan, and which results in unauthorized, unjustified and unfairly inflated costs to the borrower for force-placed insurance in violation of law. In doing so, Green Tree acted with bad motive and bad intentions and in order to penalize Plaintiff and the Class.

6.     As set forth in detail below, Defendants have engaged in unlawful, abusive and unfair practices with respect to force-placed insurance, including, without limitation: (a) providing force-placed insurance according to pre-arranged agreements with the Assurant Defendants including ABIC, at a substantial and inappropriately high cost to the borrower; (b) receiving kickbacks in the form of purported fees, payments,

commissions, "rebates" and/or other things of value from providers of force-placed insurance; (c) and forcing borrowers to pay for unnecessary insurance.

7.      Upon information and belief, Green Tree entered into agreements with the Assurant Defendants, pursuant to which Green Tree and/or its subsidiaries or affiliates: (a) receive a portion of the premiums for each force-placed insurance policy purchased for a borrower; and/or (b) assume a portion of the force-placed insurance policies originally written by force-placed insurance providers without any real or commensurate transfer of risk.   Moreover, upon information and belief, those arrangements are exclusive. *See* Assurant Form 10-K for the year ending December 31, 2011, filed on February 23, 2012, at 4 (attached hereto as Exhibit A)("Assurant Specialty Property establishes long-term relationships with leading mortgage lenders and servicers. The majority of our lender-placed agreements are exclusive.  Typically these agreements have terms of three to five years and allow us to integrate our systems with those of our clients.").

8.      In bringing this class action, Plaintiff does not challenge the rates filed by Defendant Assurant and/or any other insurance carrier.  Plaintiff does not challenge the rates of their force-placed hazard insurance provider as excessive.   Rather, Plaintiff challenges the manner in which Defendants Green Service and Green Tree Insurance selected Assurant and ABIC and their force-placed insurance products, the manipulation of the force-placed insurance process by all Defendants, and the impermissible kickbacks that were included in the premiums that were added to the balance of Plaintiff's and the Class members' mortgage loans.   Plaintiff does not complain that he was changed an

excessive insurance rate; rather, he complains that Green Tree acted unlawfully and in bad faith and motive when it selected the particular insurance company (the Assurant Defendants) and their particular rates and coverage, when other, more suitable options were available.

9.     Thus, while  Plaintiff does not challenge Green Tree's ability to force-place insurance policies and to charge fees/premiums for the same, Plaintiff  challenges the manner in which Defendants manipulated the force-placed insurance process for  their own financial gain, with bad motive, in breach of Green Tree's contractual duties and in violation of statutory and common law.

10.     At issue in this case is whether Defendants have been unjustly enriched by manipulating the force-placed insurance process so as to obtain unearned kickbacks and breached the express and/or implied terms of the mortgage contract (including the implied covenant of good faith and fair dealing) by unreasonably, unconscionably and unlawfully exercising  their  contractual discretion to manipulate the force-placed insurance process so as to obtain financial benefits for themselves at Plaintiff's and Class members' expense.  In this action, Plaintiff challenges Defendants' unlawful conduct and seeks compensatory damages, punitive damages, restitution for Defendants' unjust enrichment, declaratory, injunctive and other equitable relief.

## II.     THE PARTIES

11.     Individual and representative Plaintiff Jared Rapp ("Plaintiff" or "Rapp") resides primarily in Chicago, Illinois, but is also a part-time resident of East Lansing, Michigan.  Rapp is a member of the proposed Class and Subclass.

12.     Defendant Green Tree Servicing, LLC ("Green Tree Servicing") is a Delaware limited liability company and wholly-owned subsidiary of Walter Investment Management Corporation (WIMC").  It maintains its principal place of business at 345 St. Peter Street, St. Paul, Minnesota 55102.

13.     Defendant Green Tree Insurance Agency, Inc. ("Green Tree Insurance") is a Minnesota corporation and wholly-owned subsidiary of WIMC.  It maintains its principal place of business and registered office at 345 St. Peter Street, St. Paul, Minnesota 55102.

14.     Defendant Assurant, Inc. ("Assurant") is a publicly-traded (NYSE: AIZ) Delaware corporation.  It maintains its principal place of business at One Chase Manhattan Plaza, New York, New York.

15.     According to Assurant's website, Assurant, Inc. is a provider of specialized insurance products including "lender-placed" homeowners insurance or FPI.  *See* About Us, http://www.assurant.com/about/ (last accessed October 23, 2012).[1] According to Assurant, Inc.'s 2010 Annual Report as filed with the Securities and Exchange Commission ("SEC") on SEC Form 10-K, "the majority of [Assurant Inc.'s] lender-placed agreements are exclusive" and those agreements require the Assurant Defendants to "automatically issue these policies when a borrower's insurance coverage is not maintained." Assurant, Inc. has four operating segments – Assurant Solutions, Assurant

---

[1] <http://www.assurant.com/about/>

Specialty Property, Assurant Health, and Assurant Employee Benefits. Assurant has over $25 billion in assets and $7 billion in annual revenue.

16.     Assurant, Inc., along with QBE insurance, controls about 90% of the force-placed insurance market. *See* Mary Williams Walsh, *New York investigates Insurer Payments to Banks,* N.Y. Times (May 21, 2012). Assurant, Inc. offers its force-placed ("lender-placed") insurance products through the Assurant Specialty Property segment. "The largest product line within Assurant Specialty Property is homeowners insurance, consisting principally of fire and dwelling hazard insurance offered through [Assurant's] lender-placed programs." Assurant, Inc. Form 10-K for the year ending December 31, 2011, filed on February 23, 2012, at 4.  Assurant uses "a proprietary insurance-tracking administration system linked with the administrative systems of our clients to continuously monitor the clients' mortgage portfolios to verify the existence of insurance on each mortgaged property and identify those that are uninsured" and when a lapse is confirmed, "a lender-placed policy is procured by the lender." *Id.*

17.     Defendant American Bankers Insurance Company of Florida ("ABIC") is a Florida corporation.  It maintains its principal place of business at 11222 Quail Roost Drive, Miami, Florida 33157. *See* Assurant Specialty Property List of Underwriting Entities, available at: http://www.assurantspecialtyproperty.com/legalNotice.html#19 (last accessed October 23, 2012).

18.     ABIC is a wholly owned subsidiary of InterFinancial, Inc., which in turn is a wholly owned subsidiary of Assurant, Inc.  ABIC is one of Assurant Inc.'s exclusive force-placed insurance providers.  Upon information and belief, ABIC sometimes

operates under the trade names Assurant Solutions and Assurant Specialty Property. ABIC contracts with Green Tree whereby it acts as a force-placed insurance vendor. ABIC's duties include, but are not limited to, tracking loans in Green Tree mortgage portfolio, handling all customer service duties related to force-placed insurance, and securing force-placed insurance policies on properties when a borrower's insurance has lapsed. In turn, Green Tree does not perform these functions.

19.     Upon information and belief, ABIC is authorized to conduct business in every U.S. state and the District of the Columbia.

### III.     JURISDICTION AND VENUE

20.     Plaintiff filed this action in the Ramsey County District Court on August 31, 2012. On September 28, 2012, the Assurant Defendants removed the case to this court asserting federal subject matter jurisdiction.

21.     At all times mentioned herein, the unlawful, misleading and deceptive acts and decisions committed by Defendants Green Tree Servicing and Green Tree Insurance were conducted, approved, and sanctioned from their principal offices in St. Paul, Minnesota and/or otherwise emanated from their principal offices in St. Paul, Minnesota, harming consumers nationwide, including Plaintiff and the Class here. As a result, Minnesota law applies to Defendants' conduct with respect to each class member's transaction(s). Alternatively and/or in addition, Defendants' conduct violates the law of the states where Plaintiff and consumers in the Class reside, all of which are materially the same as Minnesota law as pertain to the matters described within.

## IV.    GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

## A.    OVERVIEW OF FORCE-PLACED INSURANCE

22.    When a home loan is approved, the mortgage servicer typically requires the borrower, under the terms of the mortgage, to carry the proper amount of hazard or flood insurance on the property to insure it against any perils. While force-placed insurance has been part of the mortgage process for decades, the full extent of the previously undisclosed kickbacks, unearned commissions, and profit structures have only recently been uncovered.

23.    Each and every mortgage at issue in this litigation that is owned and/or serviced by the Green Tree Defendants requires borrowers to purchase and agree to maintain hazard insurance coverage on their secured property as a condition to closing.

24.    Class member's mortgage contracts are standard-form contracts ("uniform instruments") of adhesion that contain the same or materially the same clauses (usually in Paragraph 5) addressing the lender's ability to force-place insurance, exercising its own discretion.

25.    In order to ensure that the mortgagee's interest in the secured property is protected, mortgage loan contracts typically allow the lender or third-party servicer to "force-place insurance" when the homeowner fails to maintain insurance; the amounts disbursed for the procurement of such insurance become additional debt secured by the mortgage. Paragraph 5 of Plaintiff's mortgage agreement contains such a provision affording Green Tree the authority to force-place their insurance in the event of a lapse. Thus, the failure of a borrower to maintain hazard insurance is clearly contemplated by

the mortgage contract and such a failure by the borrower does not result in a material failure to perform under the mortgage contract.

26.    This discretion afforded to Defendants to force-placed insurance is limited by the bounds of reasonable conduct and by the express terms of the mortgage contract itself.  Defendants routinely exceed the bounds of reasonableness and the spirit, intent and letter of the mortgage contract itself by force-placing insurance in a manner and in amounts that are not required to protect the lender's interest in the property in an effort to reap profits from the borrower which are not required nor contemplated by the mortgage contract and through other conduct described herein with respect to the force-placement of insurance.

27.    The mortgage contract does not disclose that the lender or servicer, or their affiliates, will receive a "commission" or other compensation from the force-placed insurance providers for purchasing the insurance or that the commission will be based upon a percentage of the cost of the premium of the force-placed insurance.  Furthermore, the mortgage contract does not disclose that the cost of the force-placed policy will incorporate certain costs not properly chargeable to the borrower.

28.    Any commissions received by Green Tree are unearned and unreasonably charged to class members as part of the force-placed insurance premiums.   No services are performed for these commissions.  Rather, any nominal services performed in relation to the placement of the force-placed policies are done by the Assurant Defendants, not Green Tree.  The Assurant Defendants are more than compensated for any services they

perform through the portion of the force-placed insurance premiums they retain.   The payments to Green Tree are undisclosed and unauthorized kickbacks.

29.     Additionally, once a lapse in hazard insurance occurs, Plaintiff and the Class have no way of refusing the charges for the force-placed insurance premiums. Likewise, once a lapse occurs, and the lender or third-party servicer decides to force place insurance, Plaintiff and the Class have no way of retroactively placing the policy with a low cost insurance provider.   The decision is 100% that of the lender and Plaintiff and the Class are completely at the mercy of the lender to exercise its discretion in good faith when force placing the policy and selecting the insurance provider and applicable rate.

30.     These lender-placed or "force-placed" insurance policies are almost always more expensive than standard insurance coverage.   Such policies can cost as much as ten times more than comparable or better, more comprehensive insurance policies that are easily available in the marketplace.   While the force-placed insurance policy is for the benefit of the lender, the cost is passed on to the borrower.

**B.     DEFENDANTS' FORCE-PLACED INSURANCE SCHEME.**

31.     Green Tree Servicing owns and services real property mortgages.   Green Tree is one of the many large mortgage owners or servicers in the country that have reaped an improper and substantial windfall from the force-placement of insurance on borrowers' property through the manipulation of the force-placed insurance market.

32.     Upon information and belief, the Green Tree Defendants force-place insurance policies though the Assurant Defendants, including ABIC, and outsource

insurance tracking, monitoring and processing to the Assurant Defendants. Upon information and belief, the tracking and placement services on class members' transactions are conducted by the Assurant Defendants and/or their affiliates, including ABIC's Insurance Tracking Services Department.

33. To accomplish the force-placement of insurance and the associated premiums, the Green Tree Defendants, in bad faith and motive, entered into exclusive arrangements with the Assurant Defendants whereby Green Tree Defendants secure coverage on the consumer's property and then charge the consumer for the premiums it allegedly paid to the insurers' affiliates (in this case, the Assurant Defendants).

34. The premiums charged for force-placed insurance are not arrived at on a competitive basis and are significantly higher than those available to Defendants in the open market for comparable or more comprehensive policies. Servicers, like Green Tree, have no incentive to comparison shop for lower cost insurance with comparable or better coverage. Rather servicers like Green Tree are financially motivated to procure policies from the provider that will provide the best financial benefit to the servicer in terms of kickbacks, unearned commissions and/or other compensation (often in the form of low cost administrative services). Likewise, despite there being no attempt to shop for a competitively priced policy, the commissions on force-placed polices are significantly higher than those available on lower priced insurance policies of comparable or better coverage. Accordingly, no good faith, arms-length transactions are taking place. Rather, such attempts are completely by-passed in favor of Defendants' decision to exploit the situation and self-deal without concern for the resulting consequences (and inflated and

unnecessary costs) placed on the borrower/class member.   Simply put, Defendants exercise their discretion to intentionally secure the highest priced, lowest coverage policies that allow them to maximize their fees and revenue, while the class members bear the entire financial burden.   This type of situation is generally referred to as reverse competition.

35.     As a result, the amounts charged by Green Tree for force-placed insurance policies are many times more than what borrowers paid for voluntary coverage and many times more what Green Tree would pay if it had obtained insurance coverage on a competitive basis on the open market and without the exclusive arrangements described above.   Moreover, force-placed insurance policies provide less coverage than voluntary insurance policies, as they protect only the lender's interests in the property.

36.     Defendants' force-placed insurance scheme operates in the same or materially the same manner for all class members.

37.     When a borrower's policy lapses, Green Tree Defendants will advance the payment for the cost of the premium (ultimately charged to borrower) to Assurant Defendants. The Assurant Defendants then kick back payments, disguised as commissions, to Green Tree Defendants or an affiliate. These kickbacks induce Green Tree into continuing its exclusive relationship with the Assurant Defendants and purchasing a more expensive policy than might otherwise have been obtained.

38.     This arrangement provides the mortgage servicer, here Green Tree, with an incentive to purchase the highest priced force-placed insurance policy possible – the

higher the cost of the insurance policy, the higher the commission or kickback. Ultimately, the borrower pays.

39.     The commissions or kickbacks are paid by Assurant Defendants or its affiliated insurance companies to Green Tree Defendants or its affiliates, in order to manipulate the force-placed insurance market and continue their pre-existing, uncompetitive, and exclusive relationship with Green Tree, or other servicers.,

40.     Essentially, the Assurant Defendants are engaging in a form of commercial bribery in order to induce Green Tree Defendants to purchase high-priced force-placed insurance policies, and have Green Tree refrain from seeking competitive bids in the market.

41.     Upon information and belief, the kickbacks paid by the Assurant Defendants to Green Tree are directly tied to the cost of the force-placed insurance and are usually a significant percentage of the total cost of each premium.

42.     Upon information and belief, the Green Tree Defendants purport to collect a commission for its role in "obtaining" the individual policies placed through the force-placed process.

43.     However, the Green Tree Defendants never obtain an individual policy for any individual borrower. In fact, Green Tree's entire mortgage portfolio is covered by a pre-arranged agreement with the Assurant Defendants. The Green Tree Defendants, therefore, play no role in purchasing insurance for an individual homeowner. Therefore, the Green Tree Defendants have done nothing but enter into an exclusive and all-inclusive agreement with the Assurant Defendants. Upon information and belief, any

14

actual work performed by the Green Tree Defendants, which is claimed to entitle them to a commission for the placement of a policy is false and non-existent.  In turn, the premiums or cost of insurance coverage represented and charged to class members is deceptive, misleading, false and inflated by the amount given to Green Tree, breaching the contract.

44.     Upon information and belief, the Assurant Defendants' agreement with the Green Tree Defendants provides that all properties within Green Tree's portfolio will be monitored by the Assurant Defendants and if a homeowner's policy voluntarily lapses or is deemed insufficient; such property will be automatically force-placed with an insurance policy provided by the Assurant Defendants. The insurance is automatically placed on the property and the premium is ultimately charged to the homeowner even if the lapse is discovered many months or years later. Homeowners pay for retroactive coverage even if no claims were made or damage to the property occurred. Upon information and belief, the Green Tree Defendants stopped entering into re-insurance arrangements with the Assurant Defendants on December 31, 2011.  The force-placed polices issued by the Assurant Defendants pursuant to the scheme previously described, and further described below, generate improper and unjust windfalls to the Assurant Defendants and their affiliates at the expense of the borrowers in the Class with whom the Assurant Defendants have no contractual relationship.  The sole justification for the tactics described above and below is the unjust enrichment of the Defendants, including the Assurant Defendants and/or their affiliates with whom Plaintiffs have no contractual relationship.

45.     Upon information and belief, when a lapse in a homeowner's insurance is discovered, an automatic process begins that is the same for all homeowners (*i.e.*, Plaintiff and the Class members).  For example, the Assurant Defendants' software begins a cycle, at regular intervals, of form letters, form insurance policies and "binders" purporting to come from Green Tree that are sent to homeowners regarding the lapse in insurance and the force-placement of insurance through the Assurant Defendants' or their affiliates.

46.     Therefore, Green Tree is paying the Assurant Defendants not only for force-placed insurance premiums, but also for a bundle of services including performing Green Tree's job of administering and servicing the mortgages (*i.e.*, monitoring and tracking Green Tree's portfolio for insurance lapses and providing notification and customer service to homeowners under the mortgage).  This bundle of administrative services includes Green Tree's cost of monitoring and servicing its portfolio of loans and is not properly chargeable to Plaintiff or the Class under their mortgages.

47.     Under this common course of conduct in force-placing insurance, the "premiums" for insurance that are charged to the Plaintiff and the Class are exorbitant and illegal because they include not only the high (and non-competitive) cost of the insurance, but also illegal kickbacks to Green Tree, which performs little to no functions or services related to the force-placement of the individual policies.  Further, the cost of the bundle of administrative services that the Assurant Defendants are providing to Green Tree is subsumed within the high premium cost.

48.     Therefore, in addition to performing no work in the actual placement of the force-placed policy, Green Tree's actions, in concert with the Assurant Defendants, act to penalize borrowers, including Plaintiff and the Member of the class, by sticking them with the highest priced force-placed insurance policy possible. Green Tree abuses its discretion to force-place insurance arbitrarily, in bad faith and with bad motive and intent in order to secure a substantial kickback from the Assurant Defendants.

49.     This arrangement insures that the Assurant Defendants are the only entity providing the insurance for Green Tree's designated portfolio of properties, with Green Tree signing off on the cost and the distribution of kickback commissions and then charging the borrower the high-cost premium.

50.     Generally, the high-cost premiums are added to the principal balance of the borrower's mortgage loan or deducted from his or her tax and insurance escrow account.

51.     The actions and practices described herein are undertaken in bad faith and motive. Defendants misrepresent to individual Green Tree borrowers that they will procure a policy to cover the risk arising from their properties when, in fact, a "master" policy has already been put in place.   Defendants then charge borrowers inflated premiums for the master policy, which are calculated to include kickbacks and costs not properly charged to the borrower without regard for competition on the open market. Defendants' only goal is to maximize their profits by charging high prices and collecting unjustified kickbacks.

52.     Defendants' manipulation of the force-placed insurance process has maximized the profits to themselves to the great financial detriment of Plaintiff and the

Class, who are never treated fairly or even consulted during the process. Defendants were not, and are not, authorized by any federal, state, or local governing body, contract, or agreement to manipulate their force-placed insurance purchases in bad faith, as alleged above.

53.    Force-placed insurance policies are extremely lucrative for Defendants. For example, in 2011, Green Tree's parent company, WIMC, obtained nearly $41.7 million of its $402 million in total revenues from insurance revenue, which primarily consisted of commissions from over 108,000 force-placed policies.

54.    In 2011, WIMC's total pro forma combined insurance revenues, including Green Tree Servicing, exceeded $68 million.[2]   Lender-placed insurance accounts for approximately 39% of WIMC/Green Tree Servicing's combined insurance revenue and approximately 10% of WIMC's pro-forma adjusted EBITA.[3]   WIMC/Green Tree Servicing' combined 2011 EBITA was $211 million and projects a 2012 EBITA of $225-240 million.  As such, force-placed insurance generated profits for Defendant Green Tree Servicing of approximately $21 million in 2011 and $22.5-24 million in 2012.

55.    Green Tree Insurance is licensed to sell insurance in 47 states, including Michigan and Minnesota, and "acts as an agent for this purpose by placing the insurance coverage with a third-party carrier and for which the agency earns a commission."[4]

---

[2] WIMC, Form 8-K, Exh. 99.1 ("Credit Suisse 13th Annual Financial Services Forum"), March February 8, 2012, p. 10.

[3] WIMC, Form 8-K, Exh. 99.1 ("Credit Suisse 13th Annual Financial Services Forum"), March February 8, 2012, p. 10.

[4] WIMC, 2011 Form 10-K, March 9, 2012, p. 11.

56.    Defendant Green Tree Insurance represents that its "revenue consists of commission income and fees earned on voluntary and lender-placed insurance policies and other products sold to customers, net of estimated future policy cancellations, as well as premium revenue from captive reinsurers."[5] It also states that it earns commission income "based on a percentage of the price of the insurance policy sold, which varies based on the type of product."[6]

57.    In 2009, WIMC wrote premiums for 6,708 force-placed policies, which decreased to 6,188 in 2010, and then increased to 108,766 policies in 2011 after the acquisition of Green Tree Servicing and Green Tree Insurance.

58.    In 2009, WIMC wrote premiums for $6.858 million in force-placed policies, which decreased to $6.036 million in 2010, and then increased to $45.063 million in 2011 after the acquisition of Green Tree Servicing and Green Tree Insurance.

59.    In 2009, WIMC generated total third-party (commission) revenue of $10.041 million, which decreased to $9.163 million in 2010, and then increased to $41.651 million in 2011 after the inclusion of $22.9 million in commissions earned by Green Tree Servicing and Green Tree Insurance.  Plaintiff estimates that WIMC will earn in excess of $55 million in insurance commissions in 2012.

60.     In 2011, Green Tree Insurance alone wrote 193,605 policies with total net premiums of $74.484 million.  Of that total, 102,578 policies with total net premiums of

---

[5] WIMC, 2011 Form 10-K, March 9, 2012, p. 40.

[6] WIMC, 2011 Form 10-K, March 9, 2012, p. 40.

$39.027 million were force-placed policies (leaving 91,027 voluntary policies with total net premiums of $35.457 million).

61.     Upon information and belief, voluntary policies sold by Green Tree Insurance typically cost much less than force-placed policies, paying a much lower commission, due to the presence of competition in the voluntary policy marketplace.

62.     Upon information and belief, the bulk of the commissions earned by Defendant Green Tree Insurance are from force-placed policies such as Plaintiff's Policy.

63.     Upon information and belief, more than 90% of Green Tree Insurance's 2011 commissions of $22.9 million were generated from its force-placed premiums of $39.027 million, representing an average force-placed insurance policy commission of more than fifty percent (50%).

64.     The force-placed insurance business is not new, but Defendants' practice of capitalizing on their ability to generate inflated commissions and bolster their bottom line is new and recently has been exposed.  As *The New York Times* recently reported:

> "Force-placed insurance appears to be the dirty little secret of the mortgage industry," Mr. Lawsky [the superintendent of the New York State Department of Financial Services] said in an interview last week. "It is a silent killer harming both consumer and investors while enriching the banks and their affiliates."
>
> * * *
>
> Force-placed insurance has exploded during the foreclosure crisis. Once a backwater that generated $1 billion a year, it is now a $6 billion-a-year business. Much of its growth has come on the backs of homeowners.
>
> * * *

There is a lot to love about force-placed insurance — if you sell it. The policies typically cost at least three times as much as ordinary property insurance. Some borrowers have been charged much more — up to 10 times the prevailing rate — according to people knowledgeable about these practices who spoke on condition of anonymity to maintain business relationships.

* * *

All in all, force-placed insurance represents a major profit center for mortgage servicers and the companies that write the policies. In many cases, you will not be surprised to learn, the servicers and the insurers are affiliated. This sets up the potential for conflicts of interest among loan servicers that are often supposed to represent investors owning mortgage loans bundled into securities.

Many banks have set up affiliates that provide this insurance or take on some of the risks that other companies have insured, known as reinsurance. These cozy relationships are a focus of investigators.

* * *

Insurers that are not affiliated with lenders have paid fees from 15 to 20 percent of the policy to the banks that place the insurance, according to former industry executives. This indicates how lucrative the business is.[7]

65.    Upon information and belief, the Assurant Defendants and/or other insurers pay kickbacks in the form of inflated commissions and/or similar unlawful sums to the Green Tree Defendants in connection with force-placed insurance. Although such kickbacks were kept secret from Plaintiff and were not disclosed in any of the form letters that were sent to him, the kickbacks paid by the Assurant Defendants to lenders

---

[7] Gretchen Morgenson, *Hazard Insurance With Its Own Perils*, The New York Times, January 22, 2012, p. BU1, *available online at* <http://www.nytimes.com/2012/01/22/business/hazard-insurance-with-its-own-perils-fair-game.html?pagewanted=print> (last accessed August 9, 2012).

and/or their affiliates on force-placed insurance coverage are the subject of numerous reported cases and government investigations.

66.     Furthermore, these fraudulent practices have recently come under examination by all fifty State Attorney Generals as part of a nationwide investigation requiring that force-placed insurance be reasonable.  And, as the State Attorney Generals have recognized, this practice has greatly contributed to the foreclosure crisis.

67.     The New York investigation of the industry has "uncovered evidence of potentially problematic and abusive practices in the industry occurring at the expense of homeowners[.]"[8] "Early findings of the investigation suggest that 15 percent or more of premiums collected by force-placed insurers flow to the banks through insurance agents affiliated with the banks."[9]

68.     On May 21, 2012, the New York Department of Financial Services held a Public Hearing on Force-Placed Insurance.    At that hearing, expert Economist and former insurance regulator, Birny Birnbaum testified regarding forced-placed practices.[10] Birnbaum's report concluded, *inter alia*, (1) "The Lender-Placed Home Insurance (LPI) market is characterized by reverse competition, in which the cost of insurance placed on the borrower's loan is pushed up by LPI insurers in competition for servicers' business"; (2) "The LPI market is not beneficially competitive to consumers, as evidenced by

---

[8] <http://www.dfs.ny.gov/about/press/pr1204261.htm> (last accessed August 9, 2012).

[9] <www.dfs.ny.gov/about/press/pr1204051.htm> (last accessed August 9, 2012).

[10] See Birnbaum Report, available at <http://www.dfs.ny.gov/insurance/hearing/fp_052012/Birny_Birnbaum_Center_for_Economic_Justice_testimony.pdf > (last accessed August  27, 2012).

numerous measures, including market concentration, high prices, low loss ratios, insurer profitability and kickbacks to servicers" (3) "Insurer excuses for maintaining excessive rates are unsupported by any evidence, actuarial principles or logic and are without merit." Birnbaum's statements accurately describe Defendants' nationwide practices with regard to force placed insurance, in material respects.

69.     Plaintiff does not dispute that Green Tree is entitled under Plaintiff's and each Class Member's mortgage to purchase force-placed insurance when a lapse in coverage actually occurs; however, Plaintiff does maintain that said purchase must be made in good faith, without bad motive and in compliance with the mortgages' terms.

70.     Plaintiff challenges the uncompetitive and unfair method used to select and place the policies which is a result of illegal kickbacks, unearned commissions, the reinsurance arrangement, and inflated and improper bundled servicing charges.

71.     Defendants' manipulation of the force-placed insurance process has maximized the profits to themselves to the great detriment of the Plaintiff and the Class. Defendants were not and are not, authorized by any federal, state, or local governing body, contract, or agreement to manipulate their force-placed insurance purchases in bad faith, and unconscionable practices. Defendants' exclusive arrangement is in place solely to maximize their profits through the manipulation of the force-placed market by charging high-cost premium prices and collecting unjustified kickbacks or other compensation. This conduct is prohibited by law.

## C.    PLAINTIFF IS A TYPICAL VICTIM OF DEFENDANTS' COMMON COURSE OF MISCONDUCT.

72.    On or about August 26, 2005, Plaintiff purchased Unit 20 of the East Lansing City Center Condominiums, a condominium located at 220 MAC Avenue, Unit 308, East Lansing, Ingham County, Michigan 48823   (the "Condominium") for approximately $205,000.00 in an arms-length transaction.  The property purchased was for Plaintiff's personal use and enjoyment.

73.    To finance the purchase of the Condominium, Plaintiff executed a written thirty-year, adjustable rate mortgage with Network Mortgage Corporation, a direct lender, on August 26, 2005 in the amount of $164,000.00.

74.    Typical of most mortgages, Plaintiff's mortgage included a provision that required him to secure and pay for adequate property insurance that protected the Condominium against loss by fire and other hazards.  It also provides that the lender has the right to force-place insurance in the event Plaintiff fails to secure such a voluntary policy or if Plaintiff's voluntary policy lapses.

75.    At all relevant times, Plaintiff's condominium association has maintained an insurance policy that protects the overall condominium structure and the individual condominium units (including Plaintiff's unit) against loss by fire and other hazards.

76.    At present, Plaintiff's Condominium Association maintains approximately $10.34 million in insurance coverage through the Cincinnati Insurance Company, with Plaintiff named as an Additional Interest**.**

77.    On August 30, 2011, Plaintiff's mortgage was assigned to Bank of America, N.A.

78.    On November 16, 2011, Bank of America, N.A. transferred all interest in Plaintiff's mortgage to Green Tree.

79.    From November 16, 2011 through the present, Green Tree has owned and serviced Plaintiff's mortgage.

80.    As of August 1, 2012, Plaintiff's outstanding balance on the Mortgage Agreement was approximately $158,000.00.

81.    In 2012, the Condominium was assessed at $82,700.00, meaning that the local assessor believes that its fair market value is approximately $165,400.00.

82.    Four months prior to the date Green Tree acquired Plaintiff's mortgage, WIMC acquired 100% of the outstanding membership interests of Green Tree Servicing on July 1, 2011 for approximately $1.0 billion in cash (including $765 million in debt) and $40.2 million in common stock.

83.    In or around January 2012, Green Tree notified Plaintiff through written correspondence that he needed to provide Green Tree with proof that Plaintiff had maintained adequate insurance coverage to protect his condominium unit against loss by fire and other hazards pursuant to the Mortgage Agreement.

84.    Prior to January 2012, neither Defendants nor any of the previous mortgage holders had ever contended that Plaintiff's insurance coverage through his condominium association was inadequate.  Paragraph 5 of the Mortgage Agreement requires Plaintiff to

maintain adequate insurance coverage to protect the Condominium against loss by fire and other hazards.

85.   Plaintiff complied with Paragraph 5 of the Mortgage Agreement at all times.  There has never been any lapse in insurance coverage.

86.   On March 1, 2012, Plaintiff received written correspondence from Green Tree Servicing (dated February 22, 2012) stating that it had obtained and would charge Plaintiff $2,283.84, plus interest, over eight payments for a forced-place insurance policy pursuant to his Mortgage Agreement.

87.   The correspondence further stated that Green Tree had purchased, from the Assurant Defendants, a force-placed insurance policy, Assurant policy number BMS0827419-00, ("Force-Placed Policy") on Plaintiff's Condominium through Green Tree.

88.   Plaintiff immediately replied to Green Tree Servicing's correspondence by sending a secure e-mail (using Green Tree Servicing's website) on or about March 1, 2012 and informed Green Tree Servicing that he satisfied his property insurance requirement via his condominium homeowner's association policy that protects the overall condominium structure and the individual condominium units (including Plaintiff's unit) against loss by fire and other hazards.  Green Tree received Plaintiff's communications confirming continuous insurance coverage on his property.

89.   Plaintiff's   mortgage   rider   and   the   mortgage   were   executed contemporaneously at closing, for the purpose of highlighting the fact that Plaintiff's Condominium Association was required to and did in fact obtain insurance coverage

sufficient to protect the overall condominium structure and individual condominium units (absent personal property) against loss by fire and other hazards.

90.     Plaintiff's Condominium Association has maintained adequate insurance coverage of Plaintiff's Condominium at all relevant times without lapse.

91.     At present, Plaintiff's Condominium Association maintains approximately $10.34 million in insurance coverage through the Cincinnati Insurance Company, with Plaintiff named as an Additional Interest.

92.     On or about March 12, 2012, Green Tree's customer service department confirmed receipt of Plaintiff's March 1, 2012 e-mail confirming insurance coverage and informed Plaintiff that Green Tree would update its records accordingly.  *See*, March 12, 2012 E-mail from Green Tree to Plaintiff, attached hereto as Exhibit B (stating "Thank you for your recent inquiry.  Your information has been forwarded to the appropriate department and your account noted accordingly.").

93.     Green Tree's March 12, 2012 e-mail never notified Plaintiff that the data that he had provided alerting Green Tree to the existing and continuous insurance coverage on his property was insufficient in any way, or that he was thereafter in violation of any contractual obligation that he had.

94.     Green Tree never contacted Plaintiff regarding the force-placed insurance again.

95.     Defendants never sent any additional correspondence regarding the purchase of any force-placed insurance.  Rather, the last correspondence Plaintiff received from any Defendant was Green Tree Servicing's e-mail of March 12, 2012

stating that the "information has been forwarded to the appropriate department and [Plaintiff's] account [had been] noted accordingly."

96.     Despite this, without notice to Plaintiff, Green Tree debited $289.42 from Plaintiff's checking account on the very next day, March 13, 2012, causing him injury, financial loss and damage.

97.     There was no valid basis or authorization for the force-placement of this policy. The policy was not force-placed, charged or paid by Plaintiff in any voluntary manner. Plaintiff never voluntarily paid any premium for any force-placed policy.

98.     Upon information and belief, the Force-Placed Policy only protects Green Tree Servicing for any outstanding mortgage balance should a fire or other hazards occur and provides no coverage of any kind for Plaintiff.

99.     Defendants Green Tree Servicing and Green Tree Insurance backdated the effective date of the Force-Placed Policy to December 1, 2011, at an annual premium of $2,283.84. In doing so, Defendants did not acknowledge Plaintiff's condominium association policy and/or explain why that policy did not satisfy Plaintiff's obligation to maintain adequate property insurance.

100.    Plaintiff could, if required, obtain a voluntary condominium insurance policy with significantly greater insurance coverage for both Plaintiff and Green Tree than the Force-Placed Policy that defendants procured for less than a $300.00 annual premium.

101.    Green Tree never informed Plaintiff that it was obtaining a force-placed insurance policy covering his Condominium. In fact, Plaintiff did not receive any

additional correspondence, other than form invoices for the cost of the Policy, from Green Tree since the March 12, 2012 e-mail correspondence indicating that his account would be "noted."

102.    On or about March 13, 2012, Green Tree began automatically debiting the Force-Placed Policy's monthly premium of $289.042 from Plaintiff's checking account. These payments were not authorized by Plaintiff and were not voluntarily paid.

103.    Green Tree continued to automatically debit the Force-Placed Policy's monthly premium of $289.42 from Plaintiff's checking account in April, May, June, July, and August of 2012.

104.    In total, Green Tree debited $1,736.52 for the Force-Placed Policy's monthly premiums from Plaintiff's checking account in 2012 causing him financial loss and damage.  .

105.    Plaintiff previously had authorized Green Tree to electronically deduct his monthly mortgage payment of $778.79, but he did not ever authorize Green Tree to electronically deduct the $289.42 monthly premium for the force-placed policy.

106.    After reviewing his bank statements in August 2012, Plaintiff first realized that Green Tree was electronically deducting more than just the regular monthly mortgage payment.

107.    Plaintiff promptly contacted Green Tree Servicing's customer service department who informed him, for the first time, that Green Tree had obtained a force-placed insurance policy covering his condominium unit pursuant to its correspondence in February 2012.

108.  Plaintiff demanded a refund of the premiums that were improperly charged and collected, however, his request was denied by Green Tree.

109.  In subsequent telephone calls made in August 2012, Green Tree provided Plaintiff with the Force-Placed Policy's number, total annual premiums, monthly premium payment amount, and the name of the insurer.

110.  As of the date this action was commenced (August 31, 2012), Defendants failed to provide a copy of the Force-Placed Policy, riders, declarations, or any other documentation of any kind.

111.  Upon Plaintiff's request, Green Tree faxed a one-page policy declaration to Plaintiff on August 9, 2012, attached hereto as Exhibit C.

112.  Plaintiff asked customer service agents at Defendants Green Tree Servicing, Green Tree Servicing Insurance, Assurant, and American Bankers if Defendants had been paid a commission for obtaining the Force-Placed Policy.  All of the customer service agents denied any knowledge of the existence of any commissions, except a licensed insurance agent at Green Tree Insurance who said that she assumed that Green Tree had earned a commission.  The amount of any commission was not disclosed.

113.  Upon information and belief, Defendant Green Tree received a substantial kickback or commission from the Assurant Defendants as a percentage of the $2,283.84 annual premium for the Force-Placed Policy.

114.  On or about August 8, 2012, Plaintiff contacted Green Tree to determine if he could obtain a voluntary policy for his condominium in East Lansing, Michigan through Green Tree Insurance. He was told that Green Tree did not offer homeowner's

insurance in Michigan, but did offer such policies in Chicago, Illinois, where Plaintiff is purchasing another condominium.

115.   After discussing the Force-Placed Policy with a licensed insurance agent at Green Tree Insurance, Plaintiff requested a quotation to insure Plaintiff's condominium in Chicago.  Plaintiff requested that the quotation contain coverage greater to or equal to the Force-Placed Policy and, in doing so, acknowledged the greater risks with the Chicago condominium in comparison to the condominium in Michigan (taller building, higher crime rates, etc.).   Green Tree Insurance's agent provided a quotation for the requested voluntary insurance policy at an annual premium of $288.00 – approximately 85% less than the Force-Placed Policy's annual premiums (a copy of the quotation is attached hereto as Exhibit D).

116.   Based on the forgoing, Plaintiff was forced to retain counsel and file this class action lawsuit seeking monetary, declaratory and injunctive relief for the defined Class.   As Plaintiff still owns the condominium in Michigan, he remains subject to Defendants' unlawful practices, described and challenged herein, in the future.   Further Defendants' unlawful conduct is capable of repetition evading review if this matter does not go forward.

117.   Plaintiff filed his original complaint in state court on August 31, 2012. Despite Green Tree's previous denial of Plaintiff's request for a refund of the premium charged, only *after* Plaintiff's original class action complaint was filed in state court, have certain Defendants attempted to pick him off as a class representative to the prejudice of the class by offering him partial and incomplete relief.  Plaintiff, however,

has upheld his duties to the class.[11]   No refunds of premiums or other relief sought has

been provided to, or received by, Plaintiff or any Class member.   Defendants have not

provided Plaintiff and the Class all monetary, declaratory and injunctive relief sought in

this action.

118.   As of October 26, 2012, Plaintiff has not received any "refund" or payment

from any Defendant by check, electronic transfer, bank wire, or any other means.

119.   Defendants acknowledge that Plaintiff's property was always covered by

acceptable insurance in the form of a policy obtained by the East Lansing City Center

Condo, with an effective date of December 31, 2011.

## V.    CLASS ACTION ALLEGATIONS

120.   This action is brought as a class action and may properly be so maintained

pursuant to Fed. R. Civ. P. 23 and other applicable rules of civil procedure.   This action

seeks recovery of actual damages, restitution, injunctive and equitable relief arising from

Defendants' unfair business practices.

121.   **Class Definition:**   The Class sought to be represented in this action is

defined as follows:

> All borrowers that had mortgages with and/or serviced by Green Tree
> Servicing, LLC and/or Green Tree Insurance Agency, Inc., on property
> located within the United States, that were charged and who paid the
> premiums for a force-placed insurance policy during the Class Period

---

[11]   Plaintiff continues to have standing to assert all claims seeking the relief set forth
herein for himself and the Class pursuant to the principals espoused in *Alpern v. Utilicorp
United, Inc.*, 84 F.3d 1525, 1539 (8th Cir. 1996), *Johnson v. U.S. Bank National
Association*, 276 F.R.D. 330 (D. Minn. 2011); *Harris v. Messerli & Kramer, P.A.*, 2008
WL 508923)

unless (1) the lender has obtained a foreclosure judgment against the borrower; (2) the borrower has entered into a short-sale agreement with the lender; (3) the borrower has granted a deed in lieu of foreclosure to the lender; (4) the borrower has entered into a loan modification agreement with the lender; (5) the borrower has filed a claim for damages which has been paid in full or part by the force-placed insurer; or, (6) the cost of the force-placed insurance was cancelled out in full (the "Class").

The Class Period dates back six years (or the length of the longest applicable statute of limitations for any claim asserted) from the date this action was originally filed. Excluded from the Class are: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; and (d) any juror selected to hear this case.

122.    Plaintiff asserts his <u>fourth</u> cause of action (Breach of Contract) on behalf of the nationwide Class and the following Sub-Class defined as follows:

All borrowers that had mortgages with and/or serviced by Green Tree Servicing, LLC and/or Green Tree Insurance Agency, Inc., on property located within the United States, that were charged and who paid the premiums for a force-placed insurance policy during the Class Period and had provided documentation to Green Tree Servicing, LLC demonstrating that the property subject to the mortgage was adequately insured under the terms of the mortgage agreement unless (1) the lender has obtained a foreclosure judgment against the borrower; (2) the borrower has entered into a short-sale agreement with the lender; (3) the borrower has granted a deed in lieu of foreclosure to the lender; (4) the borrower has entered into a loan modification agreement with the lender; (5) the borrower has filed a claim for damages which has been paid in full or part by the force-placed insurer; or, (6) the cost of the force-placed insurance was cancelled out in full (the "Insured Sub-Class").

123.    Plaintiff reserves the right to modify or amend the above-referenced definitions before the Court determines whether certification is appropriate.

124.   Defendants subjected Plaintiff and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is the Defendants' standard and undisputed business practice.

125.   **Numerosity of the Class.**   Members of the class and subclass are so numerous that their individual joinder herein is impracticable.   The Defendants sell and service tens of thousands of mortgage loans and insurance policies nationwide. The individual class members are ascertainable as the names and addresses of all class members can be identified in the business records maintained by Defendants.   The precise number of members of the class and subclass certainly numbers in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint and impractical for each to bring suit individually. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

126.   **Ascertainable Class.** The proposed Class is ascertainable.  The litigation of the questions of fact and law involved in this action will resolve the rights of all members of the Class and Subclass and hence, will have binding effect on all class members. These Class Members can be readily identified from business records, billing systems, and telephone records of the Defendants and other means readily available to the Defendants, and thus by the Plaintiff, through minimally intrusive discovery.  The class is numerous. Joinder of all class members is impracticable due to the relatively small monetary recovery for each class member in comparison to the costs associated with separate

litigation and likelihood that due to the nature of the lender-placed insurance that class members faced they may have when initially contacted Defendants, class members are likely in poor financial situations.

127.   **Commonality.**   There are questions of law and fact that are common to the Plaintiff's and Class members' claims.  These common questions of law and fact exist as to all members of the class and predominate over the questions affecting only individual members of the class.  Among such common questions of law and fact are the following:

a.   Whether Green Tree breached its mortgage agreements with Plaintiff and the Class by charging them for force-placed insurance that included illegal kickbacks (including unwarranted commissions and reinsurance payments) and by charging Plaintiff and the Class for servicing the loans;

b.   Whether Green Tree breached its mortgage agreements and any subsequent riders or related documents by demanding unnecessary hazard insurance that were not properly and adequately disclosed upon origination of such borrowers' loans or home equity lines of credit;

c.   Whether Green Tree has a pervasive policy and practice of requiring unnecessary hazard insurance contrary to the requirements of its mortgages and any subsequent riders or related documents;

d.   Whether Defendants owe their customers a duty of good faith and fair dealing, and if so, whether Defendants breached this duty by demanding unnecessary insurance;

e.   Whether Green Tree owes its customers a duty of good faith and fair dealing, and if so, whether it breached this duty by arranging for kickbacks or commissions for itself and/or its affiliates in connection with lender-placed insurance and failing to disclose the same to its customers;

f.   Whether Green Tree owe its customers a duty of good faith and fair dealing, and if so, whether it breached this duty by backdating the effective dates of lender-placed insurance policies to a period of time when there was no insurable risk;

g.   Whether the Defendants manipulated the forced-placed mortgage purchases in order to maximize the profits to themselves to the great detriment to Plaintiff and the Class;

h.   Whether other Green Tree affiliates provide any work or services in order to receive a "commission or other compensation";

i.   Whether Defendants were unjustly enriched by their conduct;

j.   Whether Defendants' form letters are false, deceptive, and/or misleading;

k.   The appropriateness and proper form of any declaratory or injunctive relief; and

l.   The appropriateness and proper measure of monetary and other damages sustained by the Class.

128.   **Typicality.** Plaintiff is a member of the Nationwide Class and the Subclass and his claims are typical of the claims of members of the Class and the Subclass. Typical of other class members, Plaintiff was charged and paid an inflated non-

competitive premium for a force-placed insurance policy during the Class Period. Plaintiff and the Class members each sustained, and will continue to sustain, damages arising from Defendants' common and uniform course of wrongful conduct, as alleged more fully herein.  Plaintiff's claims are founded on the same legal theories as those of the Class.

129.    **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interest of the members of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel who are competent and experienced in the prosecution of complex class actions involving consumer fraud, including mortgage fraud.  Plaintiff has no interests contrary to the class members, and will fairly and adequately protect the interests of the Class.

130.    To prosecute this case, Plaintiff has retained the law firms of Zimmerman Reed, PLLP and Ridout & Lyon, LLP. These firms have extensive experience in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

131.    The questions of law or fact common to Plaintiff's and each Class member's claims predominate over any questions of law or fact affecting only individual members of the class.  All claims By Plaintiff and the unnamed class members are based on the force-placed insurance policies that Defendants unlawfully secured through a common and uniform course of misconduct.

132.    Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

133.   **Superiority of Class Adjudication.** The certification of a class in this action is superior to the litigation of a multitude of cases by members of the putative class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are class members who are unlikely to join or bring an action due to, among other reasons, their reluctance to sue Defendants and/or their inability to afford a separate action. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the Class Members in relationship to the benefits received. The damages, restitution and other potential recovery for each individual member of the Class are modest, relative to the substantial burden and expense of individual prosecution of these claims. Given the amount of the individual class members' claims, few, if any, Class Members could afford to seek legal redress individually for the wrongs complained of herein. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

134.   In the alternative, the above-referenced class may be certified because:

a.   The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to

individual class members' claims which would establish incompatible standards of conduct for Defendants;

b.      The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the class who are not parties to the adjudications, or which would substantially impair or impede the ability of other class members to protect their interests; and,

c.      Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the Class.

## VI.    CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Breach of Contract**
**(Including Implied Covenant of Good Faith and Fair Dealing)**
**(Against Green Tree On Behalf of the Entire Class)**

135.    Plaintiff alleges and incorporates by reference all the preceding paragraphs above as if fully set forth herein.

136.    Plaintiff and the Class have standard form mortgage contracts with Green Tree that are similar in all material respects with respect to force-placed insurance.  At all times, Green Tree was contractually obligated to service the loans of Plaintiff and the Class pursuant to the terms of the mortgage contracts.

137.    To the extent the mortgage contracts of Plaintiff and Class members permitted Green Tree Defendants to unilaterally force-place insurance, the Green Tree

Defendants were contractually permitted to do so only to the extent necessary to protect the mortgagee's interest in the secured property.

138.   Under these mortgage contracts, Green Tree was permitted to obtain lender-placed insurance in the event of an actual lapse in coverage, however, Green Tree was only permitted to do so in a manner and amount that is reasonable and appropriate to protect an insurable interest in the property.   Although these mortgage contracts allow Green Tree to charge the homeowners for true "costs of the insurance coverage so obtained" and "amounts disbursed," nothing in the contract authorizes Green Tree to charge Plaintiff for amounts retained, rebated or kicked-back to Green Tree or for illusory placement services.   Amounts rebated or retained by Green Tree, in transactions such as Plaintiff's, are not a "cost of the insurance coverage" and not a true "disbursement" authorized under the Paragraphs 5, 9 or any other provision of the form mortgage contract.

139.   Green Tree breached their mortgage contracts with Plaintiff and the Class in at least the following respects:

    a.      Green Tree breached the express insurance provision in the Mortgage Agreement by force-placing insurance beyond the scope of coverage authorized thereunder;

    b.      Requiring borrowers to pay for insurance coverage that exceeds the amount necessary to protect the mortgagee's interest in the secured property;

    c.      Charging Plaintiff and the Class for "costs of insurance" that exceeded the true costs of insurance and amounts truly "disbursed" to the insurers;

d.   Exceeding their contractual authority to require borrowers to pay for the cost or expenses the lender incurred for force-placed insurance by requiring borrowers, such as Plaintiff and the Class, to pay the full gross amount of the premium for force-placed insurance, irrespective of the fact that the full gross premium amount was not actually an expense or cost to Green Tree because a portion of it was paid back to Green Tree and/or their affiliates in the form of a pre-negotiated commission.

e.   Assessing inflated and unnecessary insurance policy premiums against Plaintiff and the Class and misrepresenting the reason for the cost of the policies;

f.   Collecting a percentage or allowing its affiliates to collect a percentage of whatever premiums are charged to Plaintiff and the Class and not passing that percentage on to the borrower, thereby creating the incentive to seek and force-place upon the borrower (i.e., Plaintiff and the Class) the highest-priced premiums possible;

g.   Charging Plaintiff and the Class for undisclosed kickbacks and commissions in the manner described;

h.   Charging Plaintiff and the class for compensation placing the insurance when such compensation was not authorized by the contract and no actual services were performed by Green Tree to earn such compensation;

    i.       Charging Plaintiff and the Class for having a vendor perform Defendant Green Tree Servicing's obligation of tracking and administering its mortgage portfolio which is not chargeable to Plaintiff or the Class.

    j.       Backdating force-placed policies to cover time periods which have already passed and for which there was already no risk of loss.

    k.      Purchasing force-placed insurance even though other policies covered the property during the same time period.

140.    As direct, proximate, and legal result of the aforementioned breaches of contract, Plaintiff and the members of the Class have suffered damage, financial loss and injury.

141.    The unlawful practices complained of are ongoing and unless enjoined will continue and continue to put class members, including Plaintiff, at risk of further damage.

142.    The unlawful and unfair business practices set forth above have and continue to harm Plaintiffs, the Class.  Unless enjoined these practices will continue and continue to put class members at risk of further damage and loss.  A declaration of the parties' rights under the contracts is appropriate and sought.

143.    By reason of the foregoing, Plaintiff and each member of the class are entitled to recover from Defendant damages, restitution, injunctive relief, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief deemed just and equitable in the circumstances.

## SECOND CAUSE OF ACTION

### Breach of Contract, Including the
### Implied Covenant of Good Faith and Fair Dealing
### (Against Green Tree On Behalf of the Entire Class)

144. Plaintiff alleges and incorporates by reference all the preceding paragraphs above as if fully set forth herein.

145. The implied covenant of good faith and fair dealing is implied in all contracts, including any contracts between Plaintiff and Green Tree. Good faith and fair dealing is an element of every contract and imposes upon each party a duty of good faith and fair dealing in its performance.

146. The implied covenant of good faith and fair dealing requires a party vested with discretion under a contract to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously or in a manner inconsistent with the reasonable expectations of the parties.

147. Where an agreement permits one party to unilaterally determine the extent of the other's required performance, an obligation of good faith in making such determination is implied.

148. Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith.

149. In general, the implied covenant of good faith and fair dealing seeks to protect the contracting parties' reasonable expectations and serves to supply limits on the

parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms.

150.   Discretion in performance arises in several ways.  For instance, as here, the parties may find it to their mutual advantage at formation to defer decision on a particular term and to confer decision-making authority as to that term on one of them.  In such situations, the dependent party must rely on the good faith of the party in control.  In such situations courts raise explicitly the implied covenant of good faith and fair dealing, and interpret a contract in light of good faith performance.

151.   Plaintiff and the Class Members' mortgage contracts contained a provision that allowed the mortgage servicer to force-place an insurance policy on the borrower if their homeowner's insurance lapsed.  Green Tree was party to a contract with Plaintiff and each class member that made the manner of its performance a matter of its own discretion.   Plaintiff and other members of the Class, in turn, were dependent on the Green Tree and relied on Green Tree as the party in control to act reasonably, in good faith and with proper motive.

152.   In exercising that discretion in Plaintiff's and class members' transactions, Green Tree acted unreasonable, in bad faith and with bad motive and intentions.  Green Tree's conduct went beyond mere negligence, unreasonableness or the making of poor choices and instead, amounted to acting intentionally with bad motive and bad intention in order to self-deal, maximize profits pursuant to Green Tree's side deal for secret kickbacks with the Assurant Defendants, and to penalize Plaintiff and the Class.

153.   In exercising its discretion Green Tree acted with bad motive and intention in order to self-deal and penalize Plaintiff and other class members by purchasing insurance with less coverage and considerably higher premiums that alternative policies available in the marketplace and able to be purchased with no additional burden.   Rather than acting out of concern for its security, the Green Tree seized upon the perceived lapse in coverage as a money-making opportunity for it and entities it had private kickback deals with (the Assurant Defendants) and as an opportunity to penalize Plaintiff and the Class financially.   Green Tree acted not to protect its security in good faith, but rather to increase its profits at the expense of Plaintiff and the Class by funneling business to entities (the Assurant Defendants) that it had conspired with and agreed to pay it the largest kickbacks even though Green Tree conducted no work and performed no services to earn any such "commissions" or kickbacks received.

154.   Further, the premiums on force-placed policies charged Plaintiff and the Class did not reflect the true costs of insurance to Green Tree because a sizeable portion of the premiums charged was secretly retained by and/or refunded to the Green Tree as a "commissions" or kickback.   Those amounts in no manner reflected the fair value of any services provided.   In fact, Green Tree performed no services for the commissions and kickbacks received.   These were not costs properly charged to Plaintiff and the Class.

155.   But for the desire to maximize their commission / kickback revenue and the desire to penalize Plaintiffs and the Class, no rational person would have chosen to purchase the type of insurance policies Green Tree did for Plaintiff and the Class.

156. Mortgage servicers or lenders, like Defendants, are permitted to unilaterally choose the company to purchase force-placed insurance from but have an obligation to exercise their discretion in good faith and not choose the company capriciously and in bad faith (solely for their or their affiliates own financial gain) instead of seeking to continue or reestablish the prior insurance policies or seeking competitive bids on the open market in good faith.

157. In all of their actions described herein, Green Tree acted on their own behalf and as the duly authorized agent of the owner or assignee of the mortgage agreement of Plaintiff and the Members of the Class. Green Tree was contractually obligated to service the loans of Plaintiff and the Members of the Class pursuant to the terms of the mortgage agreements.

158. The mortgage contracts and insurance policies of Plaintiff and the Class contained an implied covenant of good faith and fair dealing whereby Defendants agreed to perform the obligations under the policies in good faith, to deal fairly with Plaintiff and the Class, and not to charge unnecessarily inflated fees for the lender-placed insurance for the purposes of maximizing their own profits at the Class's expense. Any discretionary authority granted to Green Tree under the terms of the Plaintiff's and Members of the Classes' mortgage contracts was subject to Green Tree's implied duty of good faith and fair dealing. Accordingly, to the extent that the mortgage contracts of Plaintiffs and the Members of the Class permitted Green Tree to unilaterally "force-place" insurance, Green Tree was obligated not to exercise their discretion to do so in bad faith for their own financial gain for the purposes of maximizing profits at borrowers' expense.

159.    Green Tree breached their duty of good faith and fair dealing in at least the following respects:

a.    Failing to make any effort whatsoever to maintain borrowers' existing insurance policies and, instead – for the sole purpose of maximizing their own profits – forcing borrowers to pay for insurance policies from providers of Green Tree's choice, such as the Assurant Defendants. Their policies needlessly came with substantially greater premiums and less coverage than borrowers' existing policies which provided an improper financial benefit to Green Tree and/or its affiliates;

b.    Using their discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting high-priced force-placed insurance policies to maximize their own profits;

c.    Failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby the insurance policies are continually purchased through the same companies without seeking a competitive price;

d.    Assessing excessive, inflated and unnecessary insurance policy premiums against Plaintiff and the Class and misrepresenting the reason for the cost of the policies;

e.      Backdating force-placed insurance policies to cover time periods which have already passed and for which there was already absolutely no risk of loss;

f.      Collecting a percentage or allowing its affiliates to collect a percentage of whatever premiums are charged to Plaintiff and the Class and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest priced premiums possible;

g.      Charging Plaintiff and the Class for commissions and claiming it to be a "cost" when the insurance is prearranged and no commission is due;

h.      Charging Plaintiff and the Class for having the vendor perform their obligation of administering its mortgage portfolio which is not chargeable to Plaintiff or the Class;

i.      Failing to provide borrowers with any opportunity whatsoever to opt out of having their force-placed insurance policies provided by an insurer with whom Green Tree had a re-insurance or commission arrangement or an affiliate relationship.

160.    As direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the Class have suffered damages, financial loss and injury.

161.    The unlawful and unfair business practices set forth above have and continue to harm Plaintiffs, the Class.  Unless enjoined these practices will continue and

continue to put class members at risk of further damage and loss.  As a result, Plaintiff and the Class are entitled to injunctive, declaratory and other equitable relief.

162.   By reason of the foregoing, Plaintiff and each member of the class are entitled to recover from Defendant damages, restitution, injunctive relief, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief deemed just and equitable in the circumstances.

<div align="center">

**THIRD CAUSE OF ACTION**

**Unjust Enrichment**
**(Against Green Tree Defendants On Behalf of the Entire Class)**

</div>

163.   Plaintiff alleges and incorporates by reference the preceding paragraphs above as if fully set forth herein, except those inconsistent with this count.

164.   This Count is alleged in the alternative to Counts I and II above.

165.   Green Tree received from Plaintiff and Class Members a benefit in the form of overcharges related to lender-placed insurance policies that include but are not limited to unwarranted kickbacks and commissions and are the result of overcharging and overreaching.

166.   Defendants entered into an agreement whereby the vendors – Assurant Defendants - would provide lender-placed insurance policies to the Green Tree Defendants through its preferred insurance carriers, most often the Assurant Defendants, for the portfolio of loans it monitored which were paid for by Plaintiff and the Class at prices that were far higher than the market rates for policies that provide even more coverage.

167.   Defendants knew that the charges for these policies were inflated and not the result of good faith practices.

168.   The Assurant Defendants paid and collected significant monies in kickbacks, commissions, and reinsurance tied directly to the cost of the lender-placed insurance premium (as a percentage).   These commissions or kickbacks were paid to the Green Tree Defendants and/or their affiliates in order to be able to exclusively provide lender-placed insurance policies.

169.   The kickbacks and commissions were subsumed into the price of the insurance premium and ultimately paid by the borrower.   Therefore, all Defendants had the incentive to charge and collect inflated prices for the force-placed policies.

170.   As a result, Plaintiff and the Class have conferred a benefit on Green Tree and Green Tree had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them – kickbacks and commissions.

171.   Green Tree will be unjustly enriched if they are allowed to retain the benefit, and each class member is entitled to an amount equal to the amount each class member enriched Green Tree and for which Green Tree has been unjustly enriched.

172.   Nothing herein seeks to stop Defendants Assurant and American Bankers or other insurers from selling lender-placed insurance policies, or end the Defendants' practice of placing lender-placed insurance on properties. Plaintiff only seeks that the Defendants provide same in good faith and not at inflated and noncompetitive prices.

173.   The unlawful and unfair business practices set forth above have and continue to harm Plaintiff, the Class.   Unless enjoined these practices will continue and

continue to put class members at risk of further damage and loss.  As a result, Plaintiff and the Class are entitled to injunctive and other equitable relief.

174.  By reason of the foregoing, Plaintiff and each member of the class are entitled to recover from Defendant damages, restitution, injunctive relief, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief deemed just and equitable in the circumstances.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT
### (Against Assurant Defendants On Behalf of the Entire Class)

175.  Plaintiff alleges and incorporates by reference the preceding paragraphs above as if fully set forth herein.

176.  Plaintiff and the members of the Class have no express contracts with the Assurant Defendants that address the practices challenged in this count.

177.  Plaintiff and Members of the Class have conferred a substantial benefit upon the Assurant Defendants derived from the force-placed insurance premiums paid by Plaintiff and Members of the Class.

178.  Upon information and belief, the premium funds that Plaintiff and members of the Class were charged were paid to, divided among, and retained by both Assurant, Inc. and ABIC.   Upon information and belief, a portion of any premium paid by class members to ABIC was ultimately up streamed to Assurant, Inc. (NYSE; AIZ), retained in corporate accounts, and reported on public statements used to raise capital in publically-

traded markets.  As a result, restitution and disgorgement by both ABIC and Assurant, Inc. is necessary to make the class whole.

179.  By, among other things, providing unnecessary and exorbitantly priced force-placed insurance policies on the properties of the Plaintiff and the members of the Class pursuant to its exclusive contract with Green Tree, and by backdating policies, the Assurant Defendants were able to collect substantial premiums for unnecessary and unusable property insurance coverage.  The Assurant Defendants were unjustly enriched by these practices.

180.  The Assurant Defendants knew that the charges for these policies were inflated and not the result of good faith practices.  The Assurant Defendants entered into the kickback / commission arrangement with Green Tree in order to encourage the unreasonable and bad faith practices described above.  The arrangement that the Assurant Defendants entered into to pay Green Tree lucrative kickbacks and commissions was a bribe between commercial entities to have Green Tree act in bad faith, and with bad motive and intent, when exercising their discretion to force-place insurance.  Absent the agreement to pay such bribes, no reasonable person would have purchased the Assurant Defendants' force-place policies at the prices that they were sold at.  The policies carried narrower coverage compared to other insurance policies readily available in the marketplace and costs up to 10 times the price.   Any person acting rationally, and not in a manner to self-deal because of a bribe, would have exercised their discretion to purchase a policy with broader coverage and at a lesser price.  The Assurant

Defendants are unjustly enriched by the premium income they received as a result of the bribes offered Green Tree.

181.  Any payments received were accepted and retained by the Assurant Defendants under circumstances such that it would be inequitable for the Assurant Defendants to retain the benefit without payment to Plaintiff and the members of the Class.

182.  As a result of Assurant Defendants' unjust enrichment, Plaintiff and the Members of the Class have sustained damages and financial loss in an amount to be determined at trial and seek full disgorgement and restitution of the Assurant Defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful or wrongful conduct alleged above.

183.  Further, Plaintiff and Members of the Class, individually and on behalf of the public, seek restitution and disgorgement of profits realized by the Assurant Defendants as a result of their unfair, unlawful and/or deceptive practices.

184.  By reason of the foregoing, Plaintiff and each member of the Class are entitled to recover from the Assurant Defendants damages, restitution, injunctive relief, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief deemed just and equitable in the circumstances.

## FIFTH CAUSE OF ACTION

## BREACH OF CONTRACT
### (Against Green Tree Defendants On Behalf of the Insured Sub-Class)

185.    Plaintiff alleges and incorporates by reference the preceding paragraphs above as if fully set forth herein.

186.    Plaintiff and the Insured Sub-Class have mortgage contracts with Defendants that are similar in all material respects.

187.    Under these mortgage contracts, riders, and similar documents, Plaintiff and members of the Insured Sub-Class are not required to maintain individual insurance coverage.  Defendants breached their mortgage contracts with Plaintiff and the Class by assessing unnecessary insurance policy premiums against Plaintiff and the Insured Sub-Class and misrepresenting the reason for the cost of the policies.

188.    At all relevant times, Plaintiff's property was covered by acceptable insurance in the form of a policy (Policy CPP0899542) obtained by the East Lansing City Center Condo with an effective date of December 31, 2011.  The East Lansing City Center Condo obtained property insurance covering Plaintiff's property, effective December 31, 2011, through the Cincinnati Insurance Company using the Johnson Lewis Associates Agency.  Prior to December 31, 2011 a similar policies existed.  There has never been a lapse in property insurance on Plaintiff's property.

189.    ABIC, as well as the other Defendants knew or should have known about the existence of this policy and the fact of constant insurance coverage on Plaintiff's property as the Assurant Defendants and Green Tree had prearranged for ABIC to

monitor and track such coverage.   ABIC has its own Insurance Tracking Services department to monitor insurance coverage and actual lapses.   Plaintiff paid for these services as part of his regular mortgage interest payments.   These services were not performed with due care.

190.   In March, 2012, Plaintiff provided evidence of the constant property insurance coverage on his property to Green Tree when he contacted Green Tree and reported these facts via secure email.  On March 12, 2012, before any force-placement of insurance, Green Tree responded to Plaintiff via email confirming receipt of the information provided and indicating that "Your information has been forwarded to the appropriate department and your account noted accordingly."

191.   Plaintiff satisfied all obligations he had under the contract.   Green Tree breached the contract by charging him the unnecessary premium and procuring the force-placed policy.

192.   Upon information and belief, similar breaches have occurred with regard to Sub-Class member's accounts.

193.   As direct, proximate, and legal result of the aforementioned breaches of contract, Plaintiff and the Class have suffered damages.

194.   The unlawful and unfair business practices set forth above have and continue to harm Plaintiffs, the Class.   Unless enjoined these practices will continue and continue to put class members at risk of further damage and loss.   As a result, Plaintiff and the Class are entitled to injunctive and other equitable relief.

195.   By reason of the foregoing, Plaintiff and each member of the class are entitled to recover from Defendant damages, restitution, injunctive relief, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief deemed just and equitable in the circumstances.

## X.   RELIEF REQUESTED

WHEREFORE, Plaintiff Jared Rapp, as an individual and on behalf of those similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

A.   For an order certifying the Class and any appropriate subclasses thereof pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his undersigned counsel to represent the Class;

B.   For preliminary and permanent injunctive relief prohibiting Defendants from engaging in the wrongful practices alleged in this Complaint;

C.   For damages sustained by Plaintiff and the Class as a result of Defendants' breach of contract and the implied covenant of good faith and fair dealing;

D.   For restitution;

E.   For disgorgements of profits;

F.   For an order finding that Defendants have been unjustly enriched and requiring Defendants to refund all unjust benefits to Plaintiff and the Class;

G.   For any statutory damages that may be provided by applicable laws;

H.   For any civil penalties that may be provided by applicable laws;

I. For payment of reasonable attorneys' fees and costs pursuant to the "common fund" doctrine, statutory fee-shifting provisions, equitable principles of contribution, and/or any other applicable method of awarding attorneys' fees and costs in class actions;

J. For payment of costs of suit incurred herein;

K. For payment of prejudgment interest as provided by law; and

L. For any such further relief as this Court deems equitable, just and proper.

## XI. JURY DEMAND

Plaintiff hereby demands a trial by jury.

<div style="margin-left:40%">

Respectfully submitted,

ZIMMERMAN REED, PLLP

</div>

Dated: October 26, 2012 By: */s/ Hart L. Robinovitch*
 Hart L. Robinovitch, MN Bar No. 240515
 14646 N. Kierland Blvd., Ste. 145
 Scottsdale, AZ  85254
 (480) 348-6400 Telephone
 (480) 348-6415 Fax

 Christopher P. Ridout, CA Bar No. 143931
 (Pending Admission *Pro Hac Vice*)
 Caleb LH Marker, CA Bar No. 269721
 (Pending Admission *Pro Hac Vice*)
 RIDOUT & LYON, LLP
 555 E. Ocean Boulevard, Suite 500
 Long Beach, CA  90802
 (562) 216-7380 Telephone
 (562) 216-7385 Fax

David A. McKay, GA Bar No. 666557
(Pending Admission *Pro Hac Vice*)
RIDOUT & LYON, LLP
555 North Point Center East, 4th Floor
Alpharetta, GA 30022
(404) 907-1870 Telephone
(404) 907-1869 Fax

**Attorneys for Plaintiff**