UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JARED RAPP, individually and on behalf of and all others similarly situated,

Plaintiff,

v.

GREEN TREE SERVICING, LLC, a Delaware limited liability company; GREEN TREE INSURANCE AGENCY, INC., a Minnesota corporation; ASSURANT, INC., a Delaware corporation; and AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, a Florida corporation,

Defendants.

Case No. 12-CV-2496 (PJS/FLN)

ORDER

---

J. Gordon Rudd, Jr. and Hart L. Robinovitch, ZIMMERMAN REED, PLLP; Caleb L.H. Marker and David A. McKay, RIDOUT & LYON LLP, for plaintiff.

Mark D. Lonergan, Erik Kemp, and John B. Sullivan, SEVERSON & WERSON; Mark G. Schroeder and Alan H. Maclin, BRIGGS & MORGAN, P.A., for defendants Green Tree Servicing, LLC and Green Tree Insurance Agency, Inc.

W. Glenn Merten, Brian P. Perryman, and Frank G. Burt, JORDEN BURT LLP; Arthur G. Boylan and Jennifer L. Olson, LEONARD, STREET AND DEINARD, P.A., for defendants Assurant, Inc. and American Bankers Insurance Company of Florida.

Plaintiff Jared Rapp borrowed money from a predecessor of defendant Green Tree Servicing, LLC ("Green Tree") to purchase a condominium. The mortgage securing the loan provided that, if Rapp failed to maintain insurance on his condominium, Green Tree could purchase insurance and force Rapp to pay the cost of that insurance. After concluding that Rapp had allowed his insurance to lapse, Green Tree — acting through its captive insurance agency, defendant Green Tree Insurance Agency, Inc. ("GTIA") — purchased insurance covering Rapp's

condominium from defendant American Bankers Insurance Company of Florida ("ABIC"). ABIC, in turn, paid a commission to GTIA. Green Tree withdrew money from Rapp's bank account to pay the cost of the insurance, including the cost of the commission.

Rapp sued Green Tree, GTIA, ABIC, and Assurant, Inc. ("Assurant") — ABIC's parent company — alleging, in essence, that they engaged in a scheme to steal from him. According to Rapp, the amount that ABIC charged for the insurance — and thus the amount that Green Tree forced Rapp to pay — far exceeded what was necessary to purchase legitimate insurance and pay a legitimate commission. This overcharge, Rapp contends, represents money unlawfully taken from him. Rapp alleges that some of this overcharge was kept by Assurant and ABIC and that the rest was kicked back to Green Tree through GTIA.

This matter is before the Court on motions by Green Tree, GTIA, Assurant, and ABIC to dismiss four of the five counts of Rapp's amended complaint. For the reasons explained below, the Court grants in part and denies in part the motion of Green Tree and GTIA, and grants the motion of Assurant and ABIC.

## I. FACTS

Rapp purchased a condominium in East Lansing, Michigan in 2005. Am. Compl. ¶ 72 [ECF No. 28]. To finance that transaction, Rapp borrowed $164,000 from Network Mortgage Corporation. *Id*. ¶ 73. That loan was secured by a mortgage on the condominium. *Id*. Rapp's mortgage was later assigned to Bank of America, N.A., which in turn assigned its interest in the mortgage to Green Tree. *Id*. ¶¶ 77-78.

Under the mortgage, Rapp was required to maintain insurance on his condominium. *Id*. ¶ 74; *see also* Def. Ex. A § 5 [ECF No. 15-1] ("Mortgage"). The mortgage provided that if Rapp

failed to maintain such insurance, "Lender may obtain insurance coverage, at Lender's option and Borrower's expense." Mortgage § 5. The type of insurance described by § 5 of the mortgage — that is, insurance that a lender purchases on behalf of a borrower — is commonly known as "force-placed" or "lender-placed" insurance. Section 5 of the mortgage also provided as follows:

> Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower . . . .

Rapp alleges that, at all relevant times, he maintained insurance on his condominium through his condominium association. Am. Compl. ¶ 75. Nevertheless, Rapp was notified by Green Tree in January 2012 that it did not have evidence that Rapp's condominium was covered by insurance.[1] *See* Decl. of Ruta Andris Ex. 1 [ECF No. 39-1]. The January notice warned Rapp (1) that Green Tree would exercise its right to purchase force-placed insurance if Rapp did not provide evidence of coverage; (2) that the force-placed policy would be purchased through "an affiliated insurance agency that will earn a commission on the insurance policy"; and (3) that the

[1] Paragraph 83 of the amended complaint alleges that Green Tree sent the January 2012 notice to Rapp. But Rapp's briefing contends that this notice was actually sent by ABIC, even though it was written on Green Tree letterhead. *See* ECF No. 49 at 5. (For this and any other document in which the ECF pagination at the top of the page differs from the document's pagination at the bottom, the Court cites to the document's pagination.) Rapp likewise contends in his briefing that the notice received by him in March 2012 was sent by ABIC. *Id*. For purposes of this order, it does not matter whether Green Tree or ABIC sent these notices.

force-placed policy "[m]ay be more expensive and provide less protection than insurance you obtain from an insurance agent or company you choose . . . ." *Id*. at 2.

Rapp did not respond to the January notice. Accordingly, on February 22, 2012, Green Tree purchased force-placed insurance from ABIC to cover Rapp's condominium. Am. Compl. ¶¶ 86-87. *See also* Decl. of Ruta Andris Ex. 3 at 4 [ECF No. 39-3]. ABIC charged $2,283.84 in premiums for $158,608 of coverage. *Id*. The policy was "backdated" — that is, made partially retroactive — so that coverage would begin on December 31, 2011[2] and run through December 31, 2012. *Id*.

On March 1, 2012, Rapp received a letter from Green Tree notifying him that it had purchased the force-placed policy. *See id*. at 2-3; Am. Compl. ¶ 86. The March notice again warned Rapp that "the insurance coverage we purchased on the collateral was obtained through an affiliated insurance agency that will earn a commission on the insurance policy." Decl. of Ruta Andris Ex. 3 at 2. In addition, the notice "strongly encourage[d]" Rapp to obtain his own insurance and stated that Green Tree would cancel the force-placed policy and refund any unearned premiums if Rapp provided evidence that he had obtained the necessary insurance. *Id*. at 3. Finally, the notice informed Rapp that he should send evidence of such insurance to a specific address in Miami, Florida. *Id*.

Rapp did not send evidence of his insurance to the address in Miami. Instead, shortly after receiving the March notice, Rapp sent an email to Green Tree stating that his condominium was covered under a policy maintained by his condominium association on his entire building.

---

[2]Although the amended complaint alleges that the policy was made retroactive to December 1, 2011, *see* Am. Compl. ¶ 99, Rapp concedes that December 31, 2011 is the correct date, *see* ECF No. 49 at 6.

Am. Compl. ¶ 88. Green Tree responded to Rapp's email with the following message: "Thank you for your recent inquiry. Your information has been forwarded to the appropriate department and your account noted accordingly." ECF No. 28-2 at 2.

Green Tree did not, however, cancel the force-placed policy at that time, and it debited a total of $1,736.52 from Rapp's bank account between March and August 2012 as payment for the premiums. Am. Compl. ¶¶ 103-104. Rapp alleges that he first became aware of these debits in August 2012. *Id*. ¶ 106. Shortly thereafter, Rapp filed this action in Minnesota state court.[3] *Id*. ¶ 117. *See also* Compl. [ECF No. 1-1]. Defendants Assurant and ABIC removed the case pursuant to 28 U.S.C. §§ 1441(a) and 1453(b). *See* ECF No. 1.

Rapp brings five claims in his amended complaint. In Count One, Rapp alleges that Green Tree and GTIA breached the mortgage by charging Rapp more than the true cost of the force-placed insurance, by purchasing a force-placed policy that was partially retroactive, and by purchasing a force-placed policy that duplicated coverage that Green Tree already had. Am. Compl. ¶¶ 135-143. In Count Two, Rapp alleges that Green Tree and GTIA breached the mortgage's implied covenant of good faith and fair dealing through the actions identified in Count One. *Id*. ¶¶ 144-162. In Count Three, Rapp alleges that Green Tree and GTIA were unjustly enriched through the alleged force-placed insurance kickback scheme. *Id*. ¶¶ 163-174. In Count Four, Rapp alleges that Assurant and ABIC were unjustly enriched by the same scheme. *Id*. ¶¶ 175-184. And in Count Five, Rapp alleges that Green Tree and GTIA breached the

---

[3]Rapp amended his complaint in October 2012. *See* ECF No. 28. That amended complaint is the operative complaint.

mortgage by purchasing force-placed insurance, given that Rapp's condominium was insured at all times under the policy maintained by his condominium association. *Id.* ¶¶ 185-195.

ABIC canceled the force-placed policy soon after Rapp filed this lawsuit. *See* ECF No. 38 at 11; ECF No. 50 at 14-15. Rapp alleges that the cancellation came in response to the lawsuit, *see* Am. Compl. ¶ 117, whereas ABIC alleges that it canceled the policy after independently obtaining evidence of Rapp's condominium-association policy, *see* ECF No. 38 at 11. ABIC also contends that it has fully refunded the money paid by Rapp for the force-placed policy. *Id.* Rapp, however, contends that he "has not received any 'refund' or payment from any Defendant . . . ." Am. Compl. ¶ 118.

Green Tree and GTIA now move to dismiss Counts One, Two, and Three of the amended complaint. ECF No. 42. Assurant and ABIC move to dismiss Count Four. ECF No. 36.

## II. ANALYSIS

### *A. Standard of Review*

Under Fed. R. Civ. P. 12(b)(6), a court must accept as true a complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the plaintiff's factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing a claim's plausibility, the Court may disregard any allegation that is conclusory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that conclusory allegations "are not entitled to the assumption of truth.").

*B. Count One — Breach of Contract*

1. Green Tree

Rapp alleges that Green Tree breached the mortgage contract in three ways:

First, Rapp alleges that the mortgage authorized Green Tree to charge him only for "the cost of the insurance coverage so obtained," Mortgage § 5, and that when Green Tree charged him $2,283.84 for the force-placed insurance that it obtained from ABIC, Green Tree charged him far more than the true cost of purchasing insurance for his condominium. According to Rapp, a portion of the amount charged to him was returned to Green Tree (through GTIA) as a kickback from ABIC. Because this kickback was not part of the "the cost of the insurance coverage so obtained," Rapp says, Green Tree breached the mortgage when it forced Rapp to pay for it. The Court will refer to this allegation as the "kickback claim."

Second, Green Tree purchased the force-placed insurance on February 22, 2012, but the coverage was made retroactive to December 31, 2011. Rapp alleges that the retroactive portion of the insurance coverage was unnecessary, as the period from December 31, 2011 to February 22, 2012 had already passed, and thus there was no risk of loss to Green Tree for that period. Because there was no risk of loss during this period, says Rapp, the retroactive portion of the force-placed policy was unnecessary, and Green Tree exceeded its authority under the mortgage by purchasing it and forcing Rapp to pay for it. The Court will refer to this allegation as the "retroactivity claim."

Third, Rapp alleges that Green Tree was covered under a "master policy" that fully protected its interest in Rapp's condominium. According to Rapp, the force-placed policy was unnecessary (because the coverage that it provided was entirely duplicative of coverage that

Green Tree already had under its master policy) and therefore the mortgage did not authorize Green Tree to use Rapp's money to purchase it. The Court will refer to this allegation as the "duplication claim."

Under Michigan law,[4] a claimant must prove the following to prevail on a breach-of-contract claim: "(1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Woodland Harvesting, Inc. v. Ga. Pac. Corp.*, 693 F. Supp. 2d 732, 737 (E.D. Mich. 2010) (internal quotations omitted).

*a. The Kickback Claim*

The mortgage clearly permits Green Tree to purchase force-placed insurance. *See* Mortgage § 5. In fact, the mortgage clearly permits Green Tree to purchase *expensive* force-placed insurance. *See id*. ("Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained."). Nothing in the mortgage imposes a duty on Green Tree to shop around for the best rate on force-placed insurance. Rapp does not dispute Green Tree's authority to purchase force-placed insurance — even expensive force-placed insurance — should a lapse in coverage occur.

---

[4]Rapp's mortgage contains a choice-of-law clause providing that the mortgage "shall be governed by . . . the law of the jurisdiction in which the Property is located." Mortgage § 16. Rapp's condominium is located in Michigan. Am. Compl. ¶ 72. Although the amended complaint alleges that Minnesota law applies to the dispute between Rapp and the Green Tree defendants, *see* Am. Compl. ¶ 21, Rapp appears to concede in his briefing that Michigan law applies, *see* ECF No. 49 at 9 (citing elements for breach-of-contract claim under Michigan law); *id*. at 23-24 (citing Michigan law in support of his claim for breach of the implied covenant of good faith and fair dealing).

Rapp alleges, however, that there is a difference between charging him for *insurance* and charging him for *kickbacks*. Specifically, Rapp contends that, although the mortgage permits Green Tree to obtain force-placed insurance and charge him for "the cost of the insurance coverage so obtained," Mortgage § 5,

> nothing in the contract authorizes Green Tree to charge [Rapp] for amounts retained, rebated or kicked-back to Green Tree or for illusory placement services. Amounts rebated or retained by Green Tree . . . are not a "cost of the insurance coverage" and not a true "disbursement" authorized under . . . the form mortgage contract.

Am. Compl. ¶ 138. Rapp contends that the true "cost of the insurance coverage" obtained by Green Tree was less than the $2,283.84 charged to him because a substantial portion of that amount was returned to Green Tree (through GTIA) as a kickback.

For its part, Green Tree contends that the amount returned to it was not a kickback, but a legitimate commission that GTIA earned for placing Rapp's insurance with ABIC. Green Tree points out that commissions are often charged for placing insurance policies and therefore are often a part of the cost of obtaining coverage. Thus, says Green Tree, although part of the $2,283.84 charged by ABIC (and passed on to Rapp) was used to pay commissions to GTIA, "the cost of the insurance coverage so obtained" was nevertheless $2,283.84. Mortgage § 5. Green Tree also points out that the January and March 2012 notices explicitly warned Rapp that an insurance agency affiliated with Green Tree would earn a commission on the force-placed policy.

Green Tree is knocking down a straw man. Rapp does not contend that a commission can never be included as part of "the cost of . . . insurance coverage," nor does he contend that he was insufficiently warned that he would have to pay a commission. Instead, Rapp contends that all or most of what Green Tree has *labeled* as a "commission" was not, in fact, a commission, because

the purported commission was so high, and because GTIA did so little to earn it. According to Rapp, the amount charged to Green Tree by ABIC — and then passed on to Rapp by Green Tree — included not just amounts for the insurance and a commission, but also an *additional* amount that was simply graft. Rapp contends that, although ABIC kept some of this overcharge for itself, most of it was kicked back to Green Tree (through GTIA), essentially to bribe Green Tree to continue to do business with ABIC.

The Court agrees with Rapp that the kickback claim is a viable claim for breach of contract against Green Tree.[5] The mortgage gives Green Tree the authority to charge Rapp for "the cost of the insurance coverage so obtained." It is true that the mortgage does not obligate Green Tree to buy cheap insurance — and it is true that a legitimate commission paid to an agency that places insurance is part of the cost of that insurance — but the amount that Green Tree charges Rapp must nevertheless be for *insurance*. An unearned kickback is not a cost of insurance, even if it is (dishonestly) labeled as a "commission." To take an extreme example: Suppose that ABIC charged Green Tree $105,000 in premiums for $100,000 in insurance coverage, then returned $103,000 of that $105,000 to GTIA as a "commission." In such a case, there could be little doubt that the cost of the insurance was nowhere near $105,000; after all, no one would pay a $103,000 commission to an agency for placing a $100,000 policy.

---

[5]Green Tree argues that the amended complaint lacks "'well-pled, non-conclusory factual allegations supporting the alleged scheme of kickbacks and commissions . . . .'" ECF No. 44 at 14 (quoting *McKenzie v. Wells Fargo Home Mortg., Inc.*, No. C-11-04965 JCS, 2012 WL 5372120, at *20 (N.D. Cal. Oct. 30, 2012)). The Court disagrees. The 58-page amended complaint explains the alleged scheme at the heart of Rapp's breach-of-contract claim in ample detail. *See generally* Am. Compl. ¶¶ 31-71. These factual allegations are more than sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The scheme alleged by Rapp is, of course, not nearly so egregious, but the principle is the same. According to Rapp, the amount that he was charged by Green Tree for the force-placed insurance so grossly exceeded the amount that any buyer would have paid for such insurance (even taking into account the need to pay a commission) — and GTIA did so little to earn the "commission" — that a jury could find that Green Tree forced him to finance not only "the cost of the insurance coverage so obtained," Mortgage § 5, but also the cost of a kickback paid by ABIC to GTIA. If Rapp's allegation is true, then Green Tree breached the mortgage contract.[6] The Court therefore denies Green Tree's motion to dismiss Count One of the amended complaint as to the kickback claim.

*b. The Retroactivity Claim*

Green Tree purchased the force-placed policy covering Rapp's condominium on February 22, 2012, but the coverage was made retroactive to December 31, 2011.[7] According to Rapp, Green Tree breached the mortgage contract when it charged Rapp for the retroactive period of the insurance coverage, because that period had already passed, and thus Green Tree was not at risk for that period.

As an initial matter, there is nothing at all suspicious about purchasing retroactive or "backdated" insurance coverage. "Backdating . . . ensures that the property is continuously covered in the event that a loss occurs during a period of insufficient coverage." *LaCroix v. U.S.*

---

[6]As a practical matter, it may be difficult for the jury to distinguish an earned commission — which, by Rapp's admission, is part of the cost of insurance — from an unearned kickback. But that is a problem of proof that will confront Rapp at trial; it is not a reason to dismiss Rapp's complaint.

[7]It is unclear from the record why December 31, 2011 was chosen as the date to begin coverage.

*Bank, N.A.*, No. 11-CV-3236, 2012 WL 2357602, at *5 (D. Minn. June 20, 2012). It would be reasonable for Green Tree to acquire coverage for the *entire* period for which it believed Rapp's property had been uninsured — including for time that had already passed — to ensure that Green Tree would be covered in the event that Rapp's condominium had been damaged in some way during that period.

Of course, to say that Green Tree acted reasonably in purchasing retroactive insurance is not to say that the mortgage authorized Green Tree to purchase that insurance. Those are separate questions. But § 5 of the mortgage authorizes Green Tree to purchase insurance to cover any period in which Rapp fails to maintain insurance on his condominium, and nothing in § 5 limits this authorization to "prospective" insurance. Rapp points out that § 5 warns that the force-placed insurance policy "shall cover Lender, but might or might not protect Borrower . . . ." Mortgage § 5. It is not clear how this provision can be read to prohibit the purchase of retroactive insurance. If Rapp means to argue that retroactive insurance is not authorized because it does not "cover Lender" — because "Lender" bears no risk of loss for any past period of time — then Rapp is mistaken. As explained above, it is entirely possible that, at the time that it purchases a force-placed policy, Green Tree might not be aware of damage that occurred to the borrower's property during the past uninsured period. By purchasing retroactive insurance, Green Tree prudently ensures that it will be covered if it later becomes aware of such a loss.

Finally, Rapp claims that "[b]ecause the Mortgage by its own terms does not require obtaining a backdated policy in the event of a lapse, the fact that Green Tree in its own discretion obtained a back-dated policy is a breach of the Mortgage." ECF No. 49 at 18-19. It is true that the mortgage does not *require* Green Tree to obtain retroactive coverage. But the mortgage also

does not *forbid* Green Tree from doing so. The mortgage permits Green Tree to purchase insurance in order to protect its interest in Rapp's condominium — and, as explained above, backdated insurance does indeed protect Green Tree's interest in Rapp's condominium.

In short, insofar as Rapp alleges that Green Tree breached the mortgage by purchasing retroactive or backdated insurance, Rapp has failed to plead a plausible breach-of-contract claim. The Court therefore grants Green Tree's motion to dismiss Count One of the amended complaint as to the retroactivity claim.

*c. The Duplication Claim*

In his briefing, Rapp argues that, at the time that Green Tree purchased the force-placed policy on his condominium, Green Tree was already covered by a master policy that protected it from any loss to any uninsured property in its portfolio. According to Rapp, the force-placed policy purchased to cover Rapp's condominium did not provide any coverage that Green Tree did not already have. Rapp argues that Green Tree's purchase of this duplicative coverage was therefore not authorized by the mortgage, although Rapp's legal theory is not entirely clear.

The Court did not realize that Rapp was making this duplication claim until it read his briefs, because Rapp's amended complaint did not give the Court — or, more importantly, the defendants — fair notice of this claim. Hints of the duplication claim peek through a few times in the 58-page amended complaint, but nowhere does the complaint clearly and directly assert this claim. To the contrary, when evidence of the duplication claim appears, that evidence seems to be conflated with the kickback claim, *see* Am. Compl. ¶ 51, or the retroactivity claim, *see* ECF No. 49 at 19.

Rapp has failed to adequately plead a claim that Green Tree breached the mortgage contract by purchasing a force-placed policy that provided coverage that was duplicative of coverage that Green Tree already enjoyed under an existing master policy. The Court therefore grants Green Tree's motion to dismiss Count One of the amended complaint as to the duplication claim. That dismissal is without prejudice, however. If Rapp wishes to pursue the duplication claim, he can move for leave to amend his complaint to add it. Before doing so, though, Rapp should use discovery to ascertain whether there is evidence to support the factual premises of the claim.[8]

2. GTIA

Rapp also brings a breach-of-contract claim against GTIA. This claim fails for the simple reason that Rapp never entered into a contract with GTIA. *See Woodland Harvesting*, 693 F. Supp. 2d at 737 ("To prevail on a breach of contract claim under Michigan law, a plaintiff must prove . . . the existence of a contract between the parties . . . ." (internal quotations omitted)). The contract that is the subject of Rapp's amended complaint is the mortgage on his condominium. That is a contract between Green Tree's predecessor and Rapp; GTIA is not a party to that contract, and no rights or responsibilities under the contract were ever assigned to GTIA. The Court therefore dismisses Count One of the amended complaint as it applies to GTIA.

---

[8]Green Tree represented at the hearing on defendants' motions to dismiss that the master policy and the force-placed policy are not, in fact, two separate policies providing duplicative coverage. *See* ECF No. 58 at 28-32. According to Green Tree, when a borrower allows his insurance to lapse, Green Tree shifts a part of the cost of the master policy onto that borrower. If Green Tree's representations are true, then Rapp's duplication claim would not appear to be viable.

*C. Count Two — Breach of the Implied Covenant of Good Faith and Fair Dealing*

Count Two of the amended complaint alleges that Green Tree and GTIA breached the mortgage's implied covenant of good faith and fair dealing. Obviously, because GTIA was not a party to the mortgage contract, it could not have violated any of the mortgage's covenants — express or implied. Count Two is therefore dismissed as it applies to GTIA.

As for Green Tree: Michigan law regarding the implied covenant of good faith and fair dealing is confusing and contradictory. One thing is clear, however: "Michigan does not recognize an independent tort-like action for the breach of this implied covenant." *Harp v. Equilon Enters., L.L.C.*, Docket No. 302084, 2012 WL 975050, at *6 (Mich. Ct. App. Mar. 22, 2012) (citing *Kewin v. Mass. Mut. Life Ins. Co.*, 295 N.W.2d 50 (Mich. 1980)). That is precisely what Rapp pleads against Green Tree in Count Two of his amended complaint — "an independent tort-like action for the breach of this implied covenant." *Id.* The Court therefore dismisses Count Two as it applies to Green Tree.

*D. Count Three — Unjust Enrichment against Green Tree and GTIA*

Count Three of the amended complaint asserts a claim of unjust enrichment against Green Tree and GTIA. "[U]nder the equitable doctrine of unjust enrichment, a person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Mich. Educ. Emps. Mut. Ins. Co. v. Morris*, 596 N.W.2d 142, 151 (Mich. 1999) (internal quotations omitted). According to Rapp, Green Tree and GTIA were unjustly enriched when they retained the kickback paid by ABIC and passed on the cost of that kickback to Rapp. "The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the

plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993).

1. Green Tree

The doctrine of unjust enrichment allows a court to imply a contract when a defendant would otherwise improperly retain a benefit bestowed by the plaintiff. "However, a contract will be implied only if there is no express contract covering the same subject matter." *Id*. An express contract between Green Tree and Rapp — the mortgage — covers the subject matter of Rapp's unjust-enrichment claim against Green Tree.[9] The Court therefore dismisses Count Three as it applies to Green Tree.

2. GTIA

Rapp and GTIA are not parties to any contract, which is why the Court dismissed Rapp's breach-of-contract claims against GTIA. But GTIA nevertheless offers three arguments for why Rapp's unjust-enrichment claim against it should be dismissed. First, GTIA argues that because it received money from ABIC, and not from Rapp, Rapp did not confer a benefit on GTIA and therefore cannot pursue an unjust-enrichment claim against it. Second, GTIA argues that Rapp failed to plead facts showing that its receipt of a commission (or, as Rapp would have it, a kickback) was unjust. Third, GTIA argues that Rapp's unjust-enrichment claim is barred by the voluntary-payment doctrine. The Court will address GTIA's arguments in reverse order.

---

[9]The amended complaint states that the unjust-enrichment claim "is alleged in the alternative" to the breach-of-contract claim, Am. Compl. ¶ 164, but the amended complaint never alleges, even in the alternative, that the mortgage is invalid or that an express contract does not govern the relationship between Rapp and Green Tree.

First, "[u]nder the doctrine of voluntary payment, 'where money has been voluntarily paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying.'" *Durant v. ServiceMaster Co.*, 159 F. Supp. 2d 977, 981 (E.D. Mich. 2001) (quoting *Progressive Mich. Ins. Co. v. United Wis. Life Ins. Co.*, 84 F. Supp. 2d 848, 854 (E.D. Mich. 2000)). GTIA contends that Rapp was notified that Green Tree had purchased force-placed insurance for his condominium, that Green Tree had used an affiliated agency to purchase the insurance, and that the affiliated agency had been paid a commission. Yet Rapp voluntarily paid for the insurance, says GTIA, when Rapp permitted Green Tree to withdraw the premium payments from his bank account for several months.

But if the allegations in the amended complaint are true, Rapp did not have "full knowledge of the facts" of the transaction. According to Rapp, the money taken from his bank account was used to pay not only for insurance, but for a kickback. Obviously, no one ever informed Rapp that his money was being used to finance a kickback scheme involving Green Tree, GTIA, and ABIC. *Cf. Durant*, 159 F. Supp. 2d at 981 (voluntary-payment doctrine does not justify dismissal of unjust-enrichment claim where plaintiffs were overbilled and submitted full payment in response to the bill). The voluntary-payment doctrine therefore does not bar Rapp from pursuing his unjust-enrichment claim against GTIA.

Second, GTIA argues that there was nothing "unjust" about the payment that it received from ABIC because that payment was a legitimate commission that GTIA earned by placing the force-placed policy. But, as explained above, Rapp has plausibly alleged that GTIA did little or nothing to earn the "commission," and that most or all of the commission was therefore not a

commission at all, but a kickback. *See, e.g.*, Am. Compl. ¶ 168 ("These commissions or kickbacks were paid to [Green Tree and GTIA] and/or their affiliates in order to be able to exclusively provide lender-placed insurance policies."). If that is true, then GTIA's retention of the kickback would certainly be unjust.

Finally, GTIA argues that "there was no enrichment, unjust or otherwise" because the amended complaint "does not allege any facts showing GTIA received any separate benefit *from Rapp*." ECF No. 44 at 24 (emphasis added). The payment that is the focus of Rapp's claim — the payment that GTIA alleges was a commission and that Rapp alleges was a kickback — was not paid to GTIA by Rapp, but by ABIC. GTIA contends that because Rapp did not directly confer a benefit on GTIA, he does not have a viable unjust-enrichment claim against GTIA.

But there is no per se rule in Michigan that a plaintiff asserting an unjust-enrichment claim can recover only a benefit that he has directly conferred on a defendant. The case primarily relied upon by GTIA, *McNaughton-McKay Electric Co. v. Limamar Corp.*, No. 09-11165, 2010 WL 3180402 (E.D. Mich. Aug. 11, 2010), is inapposite.[10] As *McNaughton-McKay* itself

---

[10]The facts of *McNaughton-McKay* are somewhat convoluted. In that case, the plaintiff entered into a contract to supply electrical components for machinery to a third party, and the third party entered into a contract to supply completed machinery to the defendant. *McNaughton-McKay*, 2010 WL 3180402, at *1. After the plaintiff delivered the components to the third party, the defendant canceled its contract with the third party. *Id*. The third party went out of business soon thereafter, and, as a result, did not pay the plaintiff the full amount owed for the components. *Id*. at *1-2. The completed machinery was seized and sold at auction by creditors of the third party. *Id*. at *2.

The plaintiff secured a default judgment against the third party for breach of contract, *id*., but because the third party was effectively judgment-proof, the plaintiff sought to recover from the defendant on an unjust-enrichment theory. According to the plaintiff, the defendant was unjustly enriched because it negotiated with the third party for the right to take possession of the completed machinery at a reduced cost (although it never exercised that right), and because the (continued...)

acknowledged, "'[n]umerous [Michigan] cases have held that a benefit may be unjustly obtained by a defendant through an intermediary, especially if there is some wrongdoing on the defendant's part.'" *Id*. at *4 (quoting *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 670 (E.D. Mich. 2008)). If Rapp's allegations are true, then GTIA was not an innocent recipient of a legitimate commission, but a knowing participant in a scheme under which Green Tree stole money from Rapp and funneled it through ABIC back to Green Tree in the form of a kickback paid to GTIA.

Moreover, *McNaughton-McKay* discussed two prior Michigan cases holding that plaintiffs had valid unjust-enrichment claims when "the plaintiff's [sic] provided an intermediary with a benefit, which the intermediary in turn provided to the defendant. In both cases, the defendant received the same benefit that the plaintiff initially provided to the intermediary." *McNaughton-McKay*, 2010 WL 3180402, at *5 (citing *Kammer Asphalt Paving Co., Inc. v. E. China Twp. Schools*, 504 N.W.2d 635 (Mich. 1993); *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898 (Mich. Ct. App. 2006)). This is exactly what Rapp alleges happened here: Rapp provided the benefit (the money withdrawn from his bank account to finance the kickback) to Green Tree, who passed on the benefit to ABIC, who passed on the benefit to GTIA. Thus, GTIA "received the same benefit that the plaintiff initially provided to the intermediary." *McNaughton-McKay*, 2010 WL 3180402, at *5.

---

[10](...continued)
defendant had been paid a fee by a fourth party when the fourth party canceled a contract that it had with the defendant (which led the defendant to cancel its contract with the third party). The court in *McNaughton-McKay* found that these benefits (the unused right to repossess the completed machinery and the payment from the fourth party) were too remote from the benefit supplied by the plaintiff (the electrical components) to support a claim of unjust enrichment.

Rapp has pleaded a plausible unjust-enrichment claim against GTIA, and therefore GTIA's motion to dismiss Count Three of the amended complaint is denied.

*E. Count Four — Unjust Enrichment against Assurant and ABIC*

The sole count brought by Rapp against Assurant and ABIC is for unjust enrichment. Rapp has two theories as to how Assurant and ABIC were unjustly enriched. First, Rapp alleges that Assurant and ABIC colluded with Green Tree and GTIA to artificially inflate the price of the force-placed policy covering Rapp's property. According to Rapp, Assurant and ABIC retained part of this overcharge and paid part of it to Green Tree and GTIA in the form of a kickback. Am. Compl. ¶¶ 178-180. Second, Rapp alleges that Assurant and ABIC "were able to collect substantial premiums for unnecessary and unusable property insurance coverage" by issuing backdated or retroactive insurance.[11] *Id.* ¶ 179.

Rapp's first unjust-enrichment claim mirrors the kickback claim that he made against Green Tree and GTIA. Rapp concedes (for purposes of this claim) that he could be charged for

---

[11] Assurant and ABIC argue that Rapp lacks Article III standing to bring an unjust-enrichment claim against them because he has not been injured. According to Assurant and ABIC, "[t]he sole injury plaintiff claims is that he was charged premiums for lender-placed insurance coverage." ECF No. 38 at 15. This mischaracterizes Rapp's argument. As the Court has pointed out several times, Rapp alleges that the money that was withdrawn from his bank account was *not* just used to pay for insurance and a commission; instead, Rapp says, he was charged more than what was necessary to purchase insurance and pay a commission, and Assurant and ABIC kept part of that overcharge. These allegations are sufficient to establish standing.

Assurant also argues that Rapp lacks Article III standing to bring an unjust-enrichment claim against it because it is merely a holding company, and it had nothing to do with the events at issue in this case. But "[t]he existence of a defense to a cause of action does not deprive the plaintiff of standing . . . ." *In re Senior Cottages of America, LLC*, 482 F.3d 997, 1004 (8th Cir. 2007). If what Assurant says is true, Assurant has a *defense* to the unjust-enrichment claim, but that does not mean that Rapp does not have standing to *bring* that claim.

the cost of force-placed insurance (including a legitimate commission), *see* Am. Compl. ¶ 8, and he concedes that Assurant and ABIC cannot be held liable merely for selling expensive insurance, *see* ECF No. 58 at 111. Again, though, Rapp argues that the amount withdrawn by Green Tree from his bank account and paid to ABIC far exceeded the amount necessary to pay for even expensive insurance (including even a generous commission). Rapp claims that part of the overcharge was returned to Green Tree and GTIA in the form of a kickback (this is the basis of the breach-of-contract and unjust-enrichment claims against those defendants), and that part of the overcharge was retained by Assurant and ABIC (this is the basis of the unjust-enrichment claim against those defendants). *See id*. at 112.

The Court has already held that Rapp has pleaded viable claims against Green Tree and GTIA, because, among other reasons, Rapp has pleaded that GTIA did little or nothing for its "commission," and therefore the commission was really a kickback. But the facts alleged in the amended complaint against Assurant and ABIC are not sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

To succeed on his unjust-enrichment claim against Assurant and ABIC, Rapp must prove that the amount of his money that they retained — after paying the alleged kickback to GTIA — was unjust. The only basis for that claim appearing in Rapp's amended complaint is his allegation that the insurance sold by Assurant and ABIC was really, really expensive — so expensive, in fact, that *some* portion of the amount that they retained must have been for something other than providing insurance. In particular, Rapp makes much of the fact that the force-placed policy provided by ABIC "costs up to 10 times the price" of a policy that Rapp could have purchased for his condominium in the marketplace. Am. Compl. ¶ 180.

But Rapp is comparing apples to oranges. Common sense suggests that force-placed policies expose insurance carriers to more substantial risks than voluntary policies. After all, force-placed policies are sought only when a homeowner has failed to maintain insurance on his own property, which typically indicates that the homeowner is in financial distress or that something else is amiss. Property owned by homeowners under such circumstances is more vulnerable than property owned by homeowners who maintain their own insurance. It is thus entirely unsurprising that a force-placed policy costs a lot more than a similar policy purchased by a homeowner. In short, by merely pleading that the policy issued by ABIC was a lot more expensive than a policy that he could have purchased on his own, Rapp has not pleaded a plausible claim that Assurant and ABIC unjustly retained some portion of an overcharge.[12]

Rapp's second theory mirrors his retroactivity claim against Green Tree and GTIA. As the Court has already explained, there was nothing improper about ABIC selling — or Green Tree buying — force-placed insurance that applied retroactively, so that Green Tree could be fully protected in the event that Rapp's condominium had been damaged during the period that his insurance lapsed. By merely alleging that Assurant and ABIC sold backdated insurance, Rapp has not pleaded a plausible claim for unjust enrichment. The Court therefore dismisses Count Four of the amended complaint.

---

[12]One can easily imagine facts that, if pleaded in Rapp's amended complaint, could have given him a plausible claim. For example, Rapp could have compared apples to apples — that is, he could have compared the cost of *force-placed* insurance issued by ABIC to the cost of *force-placed* insurance issued by other carriers. If ABIC's charges were far out of line, it would suggest that ABIC was charging for something other than insurance. Similarly, Rapp could have compared the cost of force-placed insurance issued by ABIC to *Green Tree* to the cost of force-placed insurance issued by ABIC to *other lenders*. If ABIC charged Green Tree far more than it charged other lenders, it would likewise suggest that ABIC was charging for something other than insurance.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion to dismiss of defendants Green Tree Servicing, LLC and Green Tree Insurance Agency, Inc. [ECF No. 42] is GRANTED IN PART and DENIED IN PART.

    a. The motion is GRANTED IN PART and DENIED IN PART as to Count One of the amended complaint, as more fully described in the body of this order. As it applies to Green Tree Insurance Agency, Inc., Count One is DISMISSED WITH PREJUDICE AND ON THE MERITS. As it applies to Green Tree Servicing, LLC, the "retroactivity claim" asserted in Count One is DISMISSED WITH PREJUDICE AND ON THE MERITS, and the "duplication claim" asserted in Count One is DISMISSED WITHOUT PREJUDICE.

    b. The motion is GRANTED as to Count Two of the amended complaint. Count Two is DISMISSED WITH PREJUDICE AND ON THE MERITS.

    c. The motion is GRANTED IN PART and DENIED IN PART as to Count Three of the amended complaint, as more fully described in the body of this order. As it applies to Green Tree Servicing, LLC, Count Three is DISMISSED WITH PREJUDICE AND ON THE MERITS.

2. The motion to dismiss of defendants Assurant, Inc. and American Bankers Insurance Company of Florida [ECF No. 36] is GRANTED. Count Four of the

amended complaint is DISMISSED WITH PREJUDICE AND ON THE MERITS.

Dated: August 5, 2013

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge