UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JARED RAPP, individually and on behalf of
and all others similarly situated,

        Plaintiff,

v.

GREEN TREE SERVICING, LLC, a
Delaware limited liability company; and
GREEN TREE INSURANCE AGENCY,
INC., a Minnesota corporation,

        Defendants.

Case No. 12-CV-2496 (PJS/FLN)


ORDER

---

J. Gordon Rudd, Jr., Hart L. Robinovitch, and David M. Cialkowski, ZIMMERMAN
REED, PLLP; Caleb L.H. Marker and David A. McKay, RIDOUT & LYON LLP, for
plaintiff.

Mark D. Lonergan, Erik Kemp, John B. Sullivan, and Mary Kate Kamka, SEVERSON &
WERSON; Alan H. Maclin and Mark G. Schroeder, BRIGGS & MORGAN, P.A., for
defendants.

Plaintiff Jared Rapp moves for certification of a nationwide class of borrowers who have

entered into mortgage contracts with defendant Green Tree Servicing, LLC ("Green Tree") over

the past decade and who have been required to pay for force-placed insurance. Rapp seeks

certification of two claims. First, Rapp alleges that Green Tree breached its mortgage contracts

with the putative class members by charging them an amount in excess of the actual cost of the

force-placed insurance that Green Tree purchased on their behalf. Second, Rapp alleges that

defendant Green Tree Insurance Agency, Inc. ("GTIA") was unjustly enriched as a result of

Green Tree's breach of the mortgage contracts. Because Rapp cannot show that questions of law

or fact common to the class predominate over questions affecting only individual class members, his motion for class certification is denied.

## I.  BACKGROUND

Rapp borrowed money from a predecessor of Green Tree to purchase a condominium in Michigan.  That loan was secured by a mortgage on the condominium, and that mortgage was eventually assigned to Green Tree.  Under the mortgage, Rapp was required to maintain insurance on his condominium.  *See* Defs. Ex. A § 5 ("Mortgage") [ECF No. 15-1].  The mortgage provided that if Rapp failed to maintain such insurance, "Lender may obtain insurance coverage, at Lender's option and Borrower's expense."  *Id*.  The type of insurance described by § 5 of the mortgage — that is, insurance that a lender purchases on behalf of a borrower — is commonly known as "lender-placed" or "force-placed" insurance.  Green Tree (acting through its captive insurance agency, GTIA) purchased force-placed insurance on behalf of Rapp in 2012.  GTIA received a commission for its involvement in the transaction.

In his amended complaint, Rapp brought a number of claims against Green Tree, GTIA, and the company that sold Rapp's force-placed insurance policy.  *See* Am. Compl. ¶¶ 135-95 [ECF No. 28].  Defendants moved to dismiss Rapp's amended complaint in its entirety.  In an order dated August 5, 2013, the Court granted the motions to dismiss in all but two respects.  *See* ECF No. 68.  First, the Court denied Green Tree's motion to dismiss Rapp's claim that it breached the mortgage contract by charging Rapp an amount in excess of the actual cost of the force-placed insurance.  Second, the Court denied the motion of GTIA to dismiss Rapp's claim that it had been unjustly enriched when it received a commission that (according to Rapp) it had done nothing to earn.

Rapp now asks the Court to certify this case as a class action under Fed. R.

Civ. P. 23(b)(3) on the surviving breach-of-contract claim against Green Tree and unjust-

enrichment claim against GTIA.  Specifically, Rapp asks the Court to allow him to represent a

class consisting of "[a]ll borrowers who had a lending agreement with Green Tree Servicing,

LLC, on property located in the United States, who since November 1, 2004, incurred an

obligation for a lender-placed insurance policy and whose lending agreement was a Single-

Family, First Lien, Fannie Mae/Freddie Mac Security Instrument."[1]  ECF No. 126 at 2.  Rapp

also stipulates that the class should exclude any borrower who has filed for bankruptcy, entered

into a short-sale agreement, or entered into a loan-modification agreement, as any such borrower

may not have been damaged by the actions of Green Tree or GTIA.  *Id*. at 2-3.

## II.  CLASS CERTIFICATION

### A.  Standard of Review

A class may not be certified unless plaintiffs meet all of the criteria of Rule 23(a) and fall

within one of the categories of Rule 23(b).  Plaintiffs bear the burden of showing that the class

should be certified and that the requirements of Rule 23 are met.  *Coleman v. Watt*, 40 F.3d 255,

258 (8th Cir. 1994).  District courts have wide discretion in determining whether to certify a

class.  *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980).  But district courts must exercise

---

[1]Rapp originally proposed a broader class consisting of "all borrowers who have had a
lending agreement with Green Tree Servicing, LLC, on property located in the United States,
who since November 1, 2004, incurred an obligation for a lender-placed insurance policy and
whose contract states that the amount of such additional debt was for 'the cost of insurance'
placed by Green Tree Servicing or Green Tree Insurance Agency . . . ."  ECF No. 111 at 1.  In his
reply brief, however, Rapp narrowed his proposed class to the group described above.

that discretion within the standards set by Rule 23, which requires a "rigorous analysis" to ensure

that class certification is appropriate.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

Rapp seeks to certify a class under Rule 23(b)(3), which provides that a class action may

be maintained if

> the court finds that the questions of law or fact common to class
> members predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for fairly and efficiently adjudicating the controversy.
> The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the
> controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation
> of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

For purposes of this order, the Court will assume that all requirements of Rule 23(a) are

met and focus its analysis on whether the proposed class fits the criteria of Rule 23(b)(3).

### B.  Breach of Contract

Rapp's mortgage contract is governed by a choice-of-law provision.  Under that

provision, "[t]his Security Instrument shall be governed by federal law and the law of the

jurisdiction in which the Property is located."  Mortgage § 16.  Rapp's property is located in

Michigan, and thus Michigan law applies to Rapp's breach-of-contract claim against Green Tree.

The proposed class is limited to borrowers who signed mortgage contracts that were materially

indistinguishable from the contract signed by Rapp.  Accordingly, each class member's breach-

of-contract claim against Green Tree is governed by the law of the jurisdiction in which the

mortgaged property is located — which means that certification of a nationwide class as to the

breach-of-contract claim would require the application of the laws of all (or almost all) of the

50 states.

"'Where the applicable law derives from the law of the 50 states, as opposed to a unitary

federal cause of action, differences in state law will compound the disparities among class

members from the different states.'" *Gustafson v. BAC Home Loans Servicing, LP*, 294

F.R.D. 529, 544 (C.D. Cal. 2013) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

1189 (9th Cir. 2001)).  That said, although the need to apply the laws of the 50 states to a breach-

of-contract claim makes class certification less likely, it does not — in and of itself — make class

certification impossible.  *Cf. In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Marketing

Litig.*, 270 F.R.D. 521 (N.D. Cal. 2010) (certifying a nationwide class on a breach-of-contract

claim under Rule 23(b)(2)).  Rapp notes, and the Court agrees, that the elements of breach of

contract do not differ much from state to state.  *See* Pl. Ex. 20 [ECF No. 114-20].  Moreover,

Rapp contends that the factual circumstances of each class member's contract claim against

Green Tree would be the same:  In each instance, Green Tree charged the class member an

amount in excess of "the cost of the insurance" purchased on the class members' behalf.

Mortgage § 5.  Finally, Rapp contends that where differences among state breach-of-contract

laws do exist (such as with respect to statutes of limitations[2]), a small number subclasses could

---

[2]Each contract claim would be governed by the statute of limitations of the state in which
is located the property owned by the class member asserting the claim.  Even if certain aspects of
Minnesota law would apply to all claims of all class members, Minnesota law specifically
provides that "if a claim is substantively based . . . upon the law of one other state, the limitation

(continued...)

be created, thus grouping together claimants whose claims are governed by similar state laws. *See* Pl. Ex. 21 [ECF No. 114-21].

It is not enough, however, that there be common questions of law or fact.  Members of a putative class — no matter how large — almost always have at least one question of law or fact in common.  What Rule 23(b)(3) requires is that the common questions must "predominate over any questions affecting only individual members," such that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The Court finds that, with respect to the breach-of-contract claim against Green Tree, questions that would require individual adjudication would substantially predominate over questions that would be common to class members.

*First*, it is an oversimplification to say that because each class member's breach-of-contract claim turns on the meaning of the phrase "the cost of the insurance," Mortgage § 5, each class member's claim will be factually similar to Rapp's.  There is no reason to think that "the cost of the insurance" for Rapp will be the same as "the cost of the insurance" for every other class member.  A jury would need to determine the "true" cost of the force-placed insurance for each class member, and then compare that "true" cost to the amount actually charged by Green Tree.  The "true" cost of the force-placed insurance in each case might depend on the location of the property, the value of the property, the personal characteristics of the borrower, the circumstances of the insurance market at the particular time and in the particular location, and countless other variables.  Whether and to what extent Green Tree charged any particular

---

[2](...continued)
period of that state applies . . . ."  Minn. Stat. § 541.31, subd. 1.

borrower more than the "true" cost of insurance would thus be an individual question, not a common question. *Cf. Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) ("If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question.").

*Second*, and relatedly, one or more of the parties is certain to attempt to introduce extrinsic evidence regarding the meaning of the phrase "the cost of the insurance." *See Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1030 (8th Cir. 2010) (finding that extrinsic evidence was necessary for the interpretation of ambiguous terms in a standard form contract). But the laws of the 50 states vary as to the admissibility of extrinsic evidence — sometimes drastically so. *See Bowers v. Jefferson Pilot Fin. Ins. Co.*, 219 F.R.D. 578, 583-84 (E.D. Mich. 2004) (vacating order granting class certification on reconsideration of "the significant variations in the states' laws with respect to the use of extrinsic evidence . . . ."). For example, many states permit the introduction of extrinsic evidence only when the contract is ambiguous or incomplete. *See, e.g.*, *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 312 (Minn. 2003) ("[W]here a written agreement is ambiguous or incomplete, evidence of oral agreements tending to establish the intent of the parties is admissible." (quotation omitted)). "In contrast to many other states," however, "California has a liberal parol evidence rule: It permits consideration of extrinsic evidence to explain the meaning of the terms of a contract even when the meaning appears unambiguous." *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001). Figuring out the laws of each of the 50 states with respect to the admissibility of extrinsic evidence would be difficult enough; fashioning a plan for applying those laws on a class basis would be nearly impossible. Many courts have declined to certify nationwide classes on

breach-of-contract claims for that reason — sometimes for that reason *alone*.  *See Gustafson*, 294

F.R.D. at 544; *Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Exp. (USA), Inc.*, No. 08-CV-761C,

2011 WL 815209, at *7 (W.D.N.Y. Mar. 2, 2011); *Bowers*, 219 F.R.D. at 583-84.

>    *Third*, using subclasses to accommodate the differences among statutes of limitations is

not as simple as Rapp suggests.  Statutes of limitations differ not only as to their length, but also

as to when each begins to run.  In Minnesota, for example, "a breach of contract action accrues at

the time of the breach," and thus the statute of limitations begins to run even if the injured party

does not know of the breach and could not possibly have discovered the breach.  *See Estate of*

*Riedel v. Life Care Retirement Communities, Inc.*, 505 N.W.2d 78, 81 (Minn. Ct. App. 1993);

*accord Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1292 (Del. 1982) (finding that "the time

limitation of a contract claim limitation statute begins to run from the date of breach of contract"

under Delaware law).  But other states apply a discovery rule, meaning that the "breach of

contract action accrues not on the date of the breach, but rather on the date the aggrieved party

either discovered the breach, or could or should have discovered the breach through the exercise

of reasonable diligence."  *Maher v. Tietex Corp.*, 500 S.E.2d 204, 207 (S.C. Ct. App. 1998)

(applying South Carolina law).  For class members governed by the discovery rule, a jury would

need to conduct a case-by-case examination of when each class member discovered or reasonably

should have discovered the breach.

>    Complicating matters even further, state laws differ regarding the extent to which

equitable-tolling doctrines apply to halt the running of statutes of limitations.  This is another

factor that would require a claimant-by-claimant analysis.  *See In re Cmty. Bank of N. Va.*, 622

F.3d 275, 293-94 (3d Cir. 2010) ("[D]efendants may oppose class certification on the ground that

class members with untimely claims must rely on equitable tolling to save their claims, which presents an individual question of law and fact that could predominate over common questions under Rule 23(b)(3) . . . ."); *Contos v. Wells Fargo Escrow Co., LLC*, No. C08-838Z, 2010 WL 2679886, at *6-7 (W.D. Wash. July 1, 2010) (denying motion for class certification due in part to difficulty in determining whether individual claims had been preserved by equitable-tolling doctrines).

These are hardly idle concerns. Rapp's allegation, at heart, is that Green Tree charged borrowers not only for the true cost of the force-placed insurance, but also an extra amount that the insurer kicked back to Green Tree and that Green Tree paid to GTIA (its captive agency). According to Rapp, Green Tree hid its conduct from borrowers by disguising the excess charges as premiums and the kickbacks as commissions paid to GTIA. If Rapp's allegation is true, then most class members have likely not yet discovered that they were charged an amount in excess of "the cost of the insurance" by Green Tree. Mortgage § 5. Moreover, many class members will have a plausible argument that Green Tree fraudulently concealed the true nature of the overcharges, thereby requiring the Court to undertake a fact-intensive inquiry into whether the statute of limitations was equitably tolled. *See Minn. Laborers Health & Welfare Fund v. Granite Re, Inc.*, 844 N.W.2d 509, 514 (Minn. 2014) ("Fraudulent concealment tolls the statute of limitations until the party discovers, or has a reasonable opportunity to discover, the concealed defect." (quotation omitted)).

*Fourth*, Green Tree alleges that the amount that Rapp and other borrowers were charged for force-placed insurance was approved by state regulators and therefore, under the laws of many states, the breach-of-contract claims would be precluded by the filed-rate doctrine. "The

filed-rate doctrine recognizes that where a legislature has established a scheme for rate-making, the rights of the rate-payer in regard to the rate he paid are defined by that scheme." *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-CV-81373-DMM, 2013 WL 139913, at *11 (S.D. Fla. Jan. 10, 2013) (citing *Taffet v. S. Co.*, 967 F.2d 1483, 1491-92 (11th Cir. 1992)).  The scope of the filed-rate doctrine varies dramatically from state to state.  At one end of the spectrum, North Carolina's filed-rate doctrine appears to bar any type of judicial attack on insurance rates that have been approved by a state regulator, even if the challenged rate resulted from illegal conduct.  *See N.C. Steel, Inc. v. Nat'l Council on Compensation Ins.*, 496 S.E.2d 369, 372-73 (N.C. 1998).  At the other end of the spectrum, Arizona has to date declined to adopt any form of the filed-rate doctrine.  *See Qwest Corp. v. Kelly*, 59 P.3d 789, 799-801 (Ariz. Ct. App. 2002).  Most states fall somewhere in between.  For example, Alabama's filed-rate doctrine requires exhaustion of administrative remedies before a judicial action challenging an approved insurance rate may be brought.  *See Tindle v. State Farm Gen. Ins. Co.*, 826 So.2d 144, 148 (Ala. Civ. App. 2001).  In Oklahoma, the filed-rate doctrine does not bar claims for common-law fraud or (perhaps) other common-law causes of action.  *See Satellite Sys., Inc. v. Birch Telecom of Okla., Inc.*, 51 P.3d 585, 587-88 (Okla. 2002).  Texas's filed-rate doctrine simply holds that insurance rates approved by an administrative agency are entitled to a (rebuttable) presumption of reasonableness.  *Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 625 (Tex. 2007).

The filed-rate doctrine hurts Rapp's attempt to certify a nationwide class for two reasons. First, it is yet another issue that must be addressed on a state-by-state (or claimant-by-claimant) basis, rather on a class-wide basis.  Second, answering the question of whether a particular state's

law bars a claim under the filed-rate doctrine can be extremely difficult and typically implicates

important matters of public policy.  Indeed, in some states, it appears that the state's own courts

cannot agree about whether the doctrine applies.  *Compare Fogel v. Farmers Grp., Inc.*,

160 Cal. App. 4th 1403, 1418 (Cal. Ct. App. 2008) (expressing skepticism that the filed-rate

doctrine applies in California) *with MacKay v. Superior Court*, 188 Cal. App. 4th 1427, 1449

(Cal. Ct. App. 2010) (disagreeing with *Fogel* "to the extent that it rejected the application of the

filed rate doctrine to California insurance rates.").  Even in those states that have unquestionably

adopted some form of the doctrine, the precise scope of the doctrine is often very difficult to

discern.  Certification of a nationwide class would require this Court to determine to what extent

the highest court of each of the 50 states had adopted or would adopt the filed-rate doctrine, often

with little or no guidance from the case law of those states.[3]

*Fifth*, a variety of other affirmative defenses might also be credibly asserted by Green

Tree, depending on the law of the state governing a class member's claim and the particular

factual circumstances giving rise to that claim.  The Court mentions only two examples:

First, Green Tree makes a colorable argument that Rapp and other putative class members

breached their mortgages by failing to honor their promises to maintain insurance on their

---

[3]Rapp contends that the filed-rate doctrine would not apply to any class member's claim because the doctrine bars only claims made against an insurer whose rate was approved by the relevant administrative agency.  *See Hoover v. HSBC Mortg. Corp. (USA)*, No. 3:13-CV-149 (MAD/DEP), 2014 WL 1280441, at *10 (N.D.N.Y. Mar. 27, 2014).  But that is clearly not the rule in every state. *See, e.g.*, *Decambaliza v. QBE Holdings, Inc.*, No. 13-CV-286-BBC, 2013 WL 5777294, at *8-9 (W.D. Wis. Oct. 25, 2013) (applying Wisconsin law in dismissing non-insuring defendants on the basis of the filed-rate doctrine); *Singleton v. Wells Fargo Bank, N.A.*, No. 2:12CV216-NBB-SAA, 2013 WL 5423917, at *1-3 (N.D. Miss. Sept. 26, 2013) (same with respect to Mississippi law).  This is yet another issue that would have to be decided on a state-by-state basis.

properties and to keep Green Tree informed about that insurance.  Under the law of some states, "[a] party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract."  *White v. Empire Exp., Inc.*, 395 S.W.3d 696, 715 (Tenn. Ct. App. 2012) (quotation omitted).  Whether this first-material-breach doctrine applies — and whether any particular class member's breach of the mortgage was "material" — would require an analysis of the facts of each case and the law of each of the 50 states.

Second, waiver may provide another defense to Green Tree.  State courts almost uniformly define waiver as "the voluntary or intentional relinquishment of a known right," but "[t]his uniformity . . . unravels beyond the definition."  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010).  A finding as to whether any particular class member waived his or her right to sue Green Tree for breach of contract would require both a legal determination of the scope of the waiver doctrine in the relevant state and a factual determination as to whether that class member's conduct constitutes waiver.

Any of these problems would in and of itself cause the Court to doubt that "questions of law or fact common to class members" would "predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Taken together, though, these problems leave no doubt that individual questions would overwhelm common questions.  Accordingly, the Court denies Rapp's motion to certify a class with respect to the breach-of-contract claim against Green Tree.

*C.  Unjust Enrichment*

As explained above, the mortgage signed by every putative class member contains a choice-of-law clause that indisputably governs the breach-of-contract claims against Green Tree and that requires application of "the law of the jurisdiction in which the Property is located." Mortgage § 16.  Thus, the laws of all (or almost all) of the 50 states would apply to the breach-of-contract claims against Green Tree.  Rapp argues, however, that the law of only *one* state — Minnesota — would apply to the unjust-enrichment claims against GTIA.  First, Rapp argues that there are no material differences among the laws of the 50 states with respect to unjust enrichment, so the Court may simply apply Minnesota law to each class member's claim.  *See Richie v. Paramount Pictures Corp.*, 544 N.W.2d 21, 29 (Minn. 1996) ("In determining whether the forum state's or a foreign state's law applies, a threshold consideration is whether the choice of one state's law over another's creates an actual conflict." (quotation omitted)).  Second, Rapp argues that even if there are material differences among the laws of the 50 states, the choice-of-law provision that governs the breach-of-contract claims does not govern the unjust-enrichment claims, because GTIA (unlike Green Tree) is not a party to the mortgage contract.  Rather than applying the choice-of-law provision in the mortgage, says Rapp, the Court must instead conduct a choice-of-law analysis under the common law.  And third, Rapp argues that the result of that choice-of-law analysis is that Minnesota law applies to every class member's unjust-enrichment claim.

The Court disagrees on all three points.  First, Rapp is incorrect in asserting that there are no material differences among the laws of the 50 states with respect to unjust enrichment.  As the Court will explain, there are, in fact, a substantial number of material differences, and thus there

is an "actual conflict" among the laws of the 50 states.  *Id.*  Second, the Court finds that the

mortgage contract's choice-of-law provision does indeed apply to the unjust-enrichment claims

brought against GTIA, and therefore finds that the law of the jurisdiction in which each class

member's property is located governs that class-member's unjust-enrichment claim.  Finally, the

Court concludes that even if the choice-of-law provision in the mortgage contract did not govern

the unjust-enrichment claims, a choice-of-law analysis under the common law would lead to the

same result — that is, to the conclusion that Minnesota law does not apply to every class

member's unjust-enrichment claim.  Because the laws of all (or almost all) of the 50 states would

apply to the unjust-enrichment claims against GTIA, individual questions of law and fact would

again predominate over questions common to the class, and thus class certification is not

warranted.

### 1.   Existence of Conflicts

Rapp first contends that there are no material differences among the unjust-enrichment

laws of the 50 states.  This argument is plainly wrong.  As countless courts have found, "the

states' different approaches to, or elements of, unjust enrichment are significant."  *Thompson v.*

*Bayer Corp.*, No. 4:07CV00017 JMM, 2009 WL 362982, at *4 (E.D. Ark. Feb. 12, 2009);

*accord, e.g.*, *Harris v. comScore, Inc.*, 292 F.R.D. 579, 583-84 (N.D. Ill. 2013); *Kunzelmann*,

2013 WL 139913, at *6; *Yarger v. ING Bank, FSB*, 285 F.R.D. 308, 323-25 (D. Del. 2012);

*Corwin v. Lawyers Title Ins. Co.*, 276 F.R.D. 484, 485-86 (E.D. Mich. 2011); *In re Aqua Dots*

*Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010); *In re Conagra Peanut Butter Prods.*

*Liab. Litig.*, 251 F.R.D. 689, 696-98 (N.D. Ga. 2008); *Thompson v. Jiffy Lube Int'l, Inc.*, 250

F.R.D. 607, 626 (D. Kan. 2008).  Some of the ways in which unjust-enrichment laws differ from

state to state have already been explained in the Court's analysis of the breach-of-contract claim.

For example, the filed-rate doctrine poses an obstacle to claimants in some states but not in

others; some states apply an occurrence rule and others a discovery rule in deciding when a

statute of limitations begins to run; and equitable-tolling doctrines differ from state to state.

There are other material differences that are unique to unjust-enrichment law.  The Court

notes two of the differences most likely to impact this litigation:

First, state laws vary widely regarding how "unjust" a defendant's conduct must be to

give rise to a recovery on an unjust-enrichment claim.  Alabama law, for example, requires that

the defendant engage in "unconscionable conduct, such as fraud, coercion, or abuse of a

confidential relationship."  *Mantiply v. Mantiply*, 951 So.2d 638, 655 (Ala. 2006) (quotation

omitted).  By comparison, Montana law requires only that the defendant engage in "some

element of misconduct" that may fall well short of unconscionable conduct.  *Randolph V.

Peterson, Inc. v. J.R. Simplot Co.*, 778 P.2d 879, 883 (Mont. 1989).  And in some states (such as

Arkansas), "[e]ven an innocent defendant" — that is, a defendant that has not committed *any*

misconduct — "is subject to an unjust enrichment claim brought by a more deserving party."

*Thompson*, 2009 WL 362982, at *4 (quotation omitted).  Thus, GTIA's conduct may give rise to

a recovery under the unjust-enrichment laws of some states but no recovery under the unjust-

enrichment laws of other states.

Second, according to Rapp's amended complaint, the benefit unjustly received by GTIA

— a kickback disguised as a commission — was not paid directly to GTIA by the borrower, but

instead passed through Green Tree (and perhaps also through the insurer that issued the force-

placed policy).  This lack of a direct link between the plaintiff and GTIA is not fatal to an unjust-

enrichment claim in some states.  This Court has already found that, under Michigan law, "there

is no per se rule . . . that a plaintiff asserting an unjust-enrichment claim can recover only a

benefit that he has directly conferred on a defendant."  ECF No. 68 at 18.  But several states

(such as North Dakota) do require that the plaintiff have directly conferred the unjust benefit on

the defendant.  *See Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891, 895 (N.D. 1999).

This direct-benefit requirement is yet another material difference among the unjust-enrichment

laws of the 50 states.[4]

     Because there are "actual conflict[s]" between the unjust-enrichment law of Minnesota

and the unjust-enrichment laws of the other states, *Richie*, 544 N.W.2d at 29 (quotation omitted),

the Court must decide whether Minnesota law or foreign law applies to each class member's

unjust-enrichment claim.

2.  Mortgage Contract and Choice of Law

     "Minnesota traditionally enforces parties' contractual choice of law provisions."

*Hagstrom v. Am. Circuit Breaker Corp.*, 518 N.W.2d 46, 48 (Minn. Ct. App. 1994).  A choice-

of-law analysis under the common law is usually unnecessary if there is a choice-of-law

provision controlling a particular claim.  *See Perry v. Zurich N. Am.*, No. A10-608, 2011

---

[4]Determining whether and to what extent any particular state has adopted the direct-benefit requirement can be very difficult.  In Minnesota, for example, the elements of an unjust-enrichment claim have been stated two different ways — one which appears to require a direct benefit, and one which does not.  *Compare Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 195 (Minn. Ct. App. 2007) (stating that the elements of an unjust-enrichment claim include "a benefit conferred" on the defendant, but not explicitly requiring that the benefit be conferred *by the plaintiff*) *with Interboro Packaging Corp. v. City of Minneapolis*, No. A09-0189, 2009 WL 2928755, at *8 (Minn. Ct. App. Sept. 15, 2009) (stating that the elements of an unjust-enrichment claim include "a benefit conferred *by the plaintiff* on the defendant . . . ." (emphasis added)).

WL 68525, at *3 (Minn. Ct. App. Jan. 11, 2011).  The question, then, is whether the choice-of-law provision in the mortgage signed by each putative class member governs his or her unjust-enrichment claim against GTIA.

The fact that the unjust-enrichment claim against GTIA is a tort claim rather than a contract claim does not preclude the application of the mortgage's choice-of-law provision.  "[U]nder Minnesota law, if analysis of the claims connected to a contract involves interpretation of the contract, then the forum will apply the contractual choice-of-law provisions to the tort claims."  *Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, 1061 (8th Cir. 2003).  "[E]ven narrowly drawn choice of law provisions will apply to non-contract claims if the non-contract claims 'are closely related to the interpretation of the contract and fall within the ambit of the express agreement.'"  *Evangelical Lutheran Church in Am. Bd. of Pensions v. Spherion Pac. Workforce LLC*, No. 04-CV-4791 (ADM/AJB), 2005 WL 1041487, at *1 (D. Minn. May 4, 2005) (quoting *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997)).

The unjust-enrichment claim pleaded by Rapp is, in essence, a claim that Green Tree charged each class member an amount in excess of what was permitted under the contract, then passed on part of that excess charge to GTIA, its captive insurance agency.  Rapp's unjust-enrichment claim is thus entirely dependent on proving a breach of contract by Green Tree.  If Green Tree did not breach the mortgage contract — that is, if it was entitled to every penny that it charged borrowers for the cost of force-placed insurance — then no class member has the right to recover that money from Green Tree, GTIA, or anyone else.  Only if Green Tree breached the mortgage contract could a class member conceivably have a viable unjust-enrichment claim

against GTIA.[5]  Because the unjust-enrichment claim is therefore "'closely related to the interpretation of the [mortgage] contract,'" *id*., the choice-of-law provision in the mortgage contract applies to the unjust-enrichment claim despite the fact that the claim sounds in tort.

Rapp points out, however, that GTIA is not a party to the mortgage contract.  Rather, each mortgage contract is between Green Tree (or its predecessor) and the borrower.  Therefore, Rapp argues, GTIA cannot enforce the choice-of-law provision against him in this litigation.

Rapp is correct that, as a general matter, contractual provisions "cannot be enforced by persons who are not parties to the contract."  *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 356 (Minn. 2003).  But there are exceptions to this general rule.  Most importantly for purposes of this case, equitable estoppel prevents a signatory to a contract from, on the one hand, relying on the contract in asserting a claim against a non-signatory, but then, on the other hand, arguing that the non-signatory cannot enforce a provision of that same contract (such as an arbitration or choice-of-law clause[6]) against the signatory.  *Id.*  The most-cited passage regarding the use of equitable estoppel in this context describes the doctrine as follows:

> Existing case law demonstrates that equitable estoppel
> allows a nonsignatory to compel arbitration in two different

---

[5]Rapp argued at the hearing on the motion for class certification that class members might succeed on their unjust-enrichment claims even if Green Tree is not found to have breached the contract because each of the 50 states has enacted an anti-rebate statute that prohibits payments of the kind GTIA is alleged to have received from Green Tree.  But Rapp has not sued under these anti-rebate statutes — most likely because, as Rapp conceded at the hearing, the anti-rebate statutes do not create a private right of action.  *See* Tr. at 76 [ECF No. 131].

[6]Most cases in which non-parties attempt to enforce contractual provisions involve arbitration clauses.  But the reasoning of these cases is not restricted to arbitration clauses.  Indeed, Rapp himself relies on *In re Wholesale Grocery Products Antitrust Litigation*, 707 F.3d 917 (8th Cir. 2013) — a case about an arbitration clause — in arguing that the choice-of-law provision should not apply to his unjust-enrichment claim.  *See* ECF No. 126 at 11.

> circumstances.  First, equitable estoppel applies when the signatory
> to a written agreement containing an arbitration clause must rely on
> the terms of the written agreement in asserting its claims against
> the nonsignatory.  When each of a signatory's claims against a
> nonsignatory makes reference to or presumes the existence of the
> written agreement, the signatory's claims arise out of and relate
> directly to the written agreement, and arbitration is appropriate.
> Second, application of equitable estoppel is warranted when the
> signatory to the contract containing the arbitration clause raises
> allegations of substantially interdependent and concerted
> misconduct by both the nonsignatory and one or more of the
> signatories to the contract.

*MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (internal quotation marks

and citations omitted; alterations incorporated), *abrogated on other grounds by Arthur Andersen*

*LLP v. Carlisle*, 556 U.S. 624, 631 (2009).  The Eighth Circuit described the doctrine similarly in

a case applying Minnesota law:   "[E]quitable estoppel applies when a complaint [brought by a

signatory against a non-signatory] involves 'allegations of pre-arranged, collusive behavior

demonstrating that the claims are intimately founded in and intertwined with the agreement at

issue.'"  *In re Wholesale Grocery Prods. Antitrust Litig.*, 707 F.3d 917, 922-23 (8th Cir. 2013)

(quoting *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 835 (8th Cir. 2010));

*accord CD Partners, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir. 2005).

The amended complaint in this case clearly involves "'allegations of pre-arranged,

collusive behavior'" between Green Tree and GTIA.  *In re Wholesale Grocery Prods.*, 707 F.3d

at 922.  Moreover, in this case, a "signatory to a written agreement containing [a choice-of-law]

clause must rely on the terms of the written agreement in asserting [his unjust-enrichment claim]

against the nonsignatory."  *MS Dealer Serv. Corp.*, 177 F.3d at 947 (quotation omitted).  Rapp

alleges that Green Tree and GTIA conspired to charge class members an amount in excess of the

cost of force-placed insurance, then to camouflage their wrongdoing by having Green Tree pass on its ill-gotten gains to GTIA in the form of a bogus "commission."  In addition, the question of whether GTIA was unjustly enriched at the expense of the class members is "intimately founded in and intertwined with" the question of whether Green Tree breached the contract by charging an amount in excess of the cost of the insurance.  *Id.* at 948 (quotation omitted).  As explained above, GTIA's enrichment could not be unjust unless Green Tree's enrichment was unjust, and Green Tree's enrichment was not unjust unless it breached the mortgage contract by charging an amount in excess of the "cost of the insurance."  Mortgage § 5.  Under these circumstances, the Court finds that GTIA can enforce the choice-of-law provision in the mortgage contract against Rapp and the other putative class members, despite the fact that only Green Tree was a signatory to the mortgage contract.  *See In re Wholesale Grocery Prods.*, 707 F.3d at 923 ("Without the contracts in those cases, the plaintiffs would not have had a cause of action.").

### 3.   Choice-of-Law Analysis

As just explained, the Court finds that the mortgage contract's choice-of-law provision applies to the unjust-enrichment claims, despite the fact that GTIA is not a party to the mortgage contract.  As a result, the law of the jurisdiction in which each class member's property is located applies to that class member's unjust-enrichment claim.  But even if the Court were to find that the contractual choice-of-law provision does *not* apply to the unjust-enrichment claims, the Court would reach the same result — that is, the conclusion that each unjust-enrichment claim is governed by the law of the state in which the mortgaged property is located — under the common law.

In analyzing the issue under the common law, this Court must use the choice-of-law rules adopted by Minnesota courts. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). In determining whether to apply Minnesota law or the law of another state, Minnesota courts consider five factors:  (1) predictability of results; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Milkovich v. Saari*, 203 N.W.2d 408, 412 (Minn. 1973); *see also Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 470 (Minn. 1994) ("These factors were not intended to spawn the evolution of set mechanical rules but instead to prompt courts to carefully and critically consider each new fact situation and explain in a straight-forward manner their choice of law.").[7]

### a.  Predictability of Results

The first factor "addresses whether the choice of law was predictable before the time of the transaction or event giving rise to the cause of action." *Danielson v. Nat'l Supply Co.*, 670 N.W.2d 1, 7 (Minn. Ct. App. 2003) (emphasis omitted). "Tort actions generally do not implicate party expectations because torts stem from unplanned accidents." *Lommen v. City of E. Grand Forks*, 522 N.W.2d 148, 150 (Minn. Ct. App. 1994). But that is not true with respect to the unjust-enrichment claim asserted in this case, because although the claim is nominally brought

---

[7]There is a suggestion in older Minnesota cases that the only relevant choice-of-law factors to be considered in tort cases are "(1) advancement of the forum's governmental interests; and (2) application of the better rule of law." *DeRemer v. Pac. Intermountain Express Co.*, 353 N.W.2d 694, 697 (Minn. Ct. App. 1984). This suggestion has been implicitly rejected by more recent Minnesota cases, *see, e.g., Montpetit v. Allina Health Sys., Inc.*, No. C2-00-571, 2000 WL 1486581, at *2-4 (Minn. Ct. App. Oct. 10, 2000); *Reed v. Univ. of N. Dak.*, 543 N.W.2d 106, 108-09 (Minn. Ct. App. 1996), and explicitly rejected by the Eighth Circuit, *see Nesladek v. Ford Motor Co.*, 46 F.3d 734, 738-39 (8th Cir. 1995).

against GTIA for its alleged wrongdoing, the claim is really predicated on Green Tree's alleged breach of the mortgage contract and Green Tree's use of its captive agency (GTIA) to camouflage that breach.  Each class member entered into his or her mortgage contract with the understanding that claims relating to the contract would be governed by the law of the state in which the mortgaged property was located.  Accordingly, a class member may very well have predicted that an unjust-enrichment claim of the kind brought by Rapp would be governed by the law of the state in which his or her property was located.  *Cf. Danielson*, 670 N.W.2d at 7 (recognizing that in tort cases arising out of insurance disputes, "predictability of result may be important.").

Rapp disagrees and argues that the first factor weighs in favor of applying Minnesota law.  In so arguing, Rapp relies primarily on *Mooney v. Allianz Life Insurance Co. of North America*, 244 F.R.D. 531, 536 (D. Minn. 2007).  But *Mooney* is distinguishable.  Like this case, *Mooney* involved an attempt to certify a class consisting of both Minnesota and non-Minnesota claimants.  And like this case, the corporate defendant in *Mooney* was headquartered in Minnesota and conducted substantial activities in Minnesota.  But unlike this case, each of the *Mooney* claimants alleged that he or she had been defrauded by the defendant when the class member purchased a financial product directly from the defendant.  Because each claimant was suing over a product that the claimant had purchased directly from a defendant that was located in Minnesota, the *Mooney* court found that each claimant "could have predicted that Minnesota law would govern claims based on . . . allegedly fraudulent activities that emanated from Minnesota." *Id*.

In this case, however, none of the plaintiffs dealt directly with GTIA, and some of them did not even deal directly with Green Tree (or any other Minnesota entity).  Rapp, for instance,

did not enter into a mortgage contract with Green Tree, but instead with Network Mortgage

Corporation, a Michigan corporation.  *See* Am. Compl. ¶ 73; Mortgage at 2.  Rapp's mortgage

was later assigned to Bank of America, N.A., and Bank of America, N.A. later assigned it to

Green Tree.  *See* Am. Compl. ¶¶ 77-78.  Thus, at the time that the parties executed the mortgage

contract — a contract between an Illinois resident (Rapp) and a Michigan corporation (Network

Mortgage Corporation) regarding a Michigan condominium — there is no reason why anyone

would have predicted that Minnesota law would apply to an unjust-enrichment claim related to

the mortgage or the condominium.  A similar point could be made about many — perhaps most

— of the other putative class members.  In cases in which the class member's original lender was

not located in Minnesota, the class member would have had no reason to predict that Minnesota

law would govern any legal claim related to the mortgage or the mortgaged property.

From Rapp's perspective, then, this factor is, at best, neutral.

### b. Maintenance of Interstate Order

The second factor — maintenance of interstate order — is primarily concerned with

whether application of Minnesota law to each class member's claim would manifest disrespect

for the sovereignty of the states whose laws would otherwise apply.  *See Jepson*, 513 N.W.2d

at 471.  As explained above, the unjust-enrichment claim against GTIA is entirely dependent on

the claim that class members were charged an amount in excess of "the cost of the insurance."

Mortgage § 5.  Many states have adopted regulatory regimes that strictly govern how and when

individuals within each state may challenge insurance rates charged within that state.  *See, e.g.*,

*State ex rel. Citifinancial, Inc. v. Madden*, 672 S.E.2d 365, 372-76 (W. Va. 2008) (rejecting

claim for failure to exhaust administrative remedies); *N.C. Steel, Inc.*, 496 S.E.2d at 373-75

(applying filed-rate doctrine in dismissing plaintiffs' claim that insurance commissioner was fraudulently induced to approve excessive rates).  These regulatory regimes reflect the various and conflicting ways that states have chosen to balance competing public-policy demands. Applying Minnesota's unjust-enrichment law to the claims of every class member would manifest a great deal of disrespect for these regulatory regimes.[8]  *Cf. Jepson*, 513 N.W.2d at 472 (finding that maintenance of interstate order weighs in favor of applying foreign law over Minnesota law because the foreign state had "the authority to regulate the terms of insurance" in that state).  Accordingly, this factor weighs heavily against applying Minnesota law to all of the unjust-enrichment claims.

### c.  Simplification of the Judicial Task

"The third factor, simplification of the judicial task, has not been given much weight" by the Minnesota Supreme Court.  *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 95 (Minn. 2000).  In applying the third factor, the relevant question is not whether applying the law of one state would be simpler than applying the laws of 50 states.  *See In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005).  Instead, the question is whether, with respect to any particular claimant, applying the law of Minnesota would be simpler than applying the law that would otherwise apply.  *Id*.  "[T]his Court is capable of resolving a non-Minnesota class

---

[8]Although not directly relevant to this case, the McCarran-Ferguson Act also reflects the unique interest of the states in regulating the insurance industry within their borders.  *See* 15 U.S.C. § 1012(b) ("No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance . . . .").

member's claims under Minnesota law or the law of the non-resident's home state." *Mooney*,

244 F.R.D. at 536.  The third factor is therefore neutral.

### d.  Advancement of the Forum's Interests

"Under the fourth factor, the Court must weigh the policy interests of Minnesota with

those of a non-Minnesota class member's home state." *Id*. at 536-37 (citing *Nesladek v. Ford

Motor Co.*, 46 F.3d 734, 739-40 (8th Cir. 1995)).  To be sure, application of Minnesota's unjust-

enrichment law would, as Rapp argues, advance "Minnesota's policy of preventing a corporation

from using Minnesota as a shield to engage in unfair business practices . . . ." *Mooney*, 244

F.R.D. at 537.  But there is no reason to believe that the unjust-enrichment laws of other states

could not equally or more effectively hold GTIA accountable for its alleged wrongdoing.  Indeed,

Minnesota's unjust-enrichment law is more restrictive — i.e., more friendly to "a corporation . . .

[that has] engage[d] in unfair business practices" — than the laws of some other states.  *Compare

ServiceMaster of St. Cloud v. GAB Business Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996)

("[I]t must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could

mean illegally or unlawfully." (quotation omitted)); *with Thompson*, 2009 WL 362982, at *4

("Arkansas plaintiffs do not have to prove any misconduct on the part of the defendant in an

unjust enrichment action.").  And those states with more protective unjust-enrichment laws have

an interest in ensuring that their citizens have full recourse to those laws.

Moreover, as explained with respect to the second *Milkovich* factor, states have a

particularly strong interest in enforcing laws that touch on the regulation of the insurance

industry.  Each state reasonably expects that its own regulatory regime will govern the payment

of commissions on insurance policies placed within that state.  Applying the laws of the

individual states — rather than the law of Minnesota — to the unjust-enrichment claims

advances the legitimate interest of each state in regulating the insurance industry within its own

borders.  The third factor therefore favors applying the laws of the 50 states.

### e.  Better Rule of Law

The fifth factor is not considered unless the other factors do not resolve the choice-of-law

issue, *see Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 455-56 (Minn. Ct. App.

2001) — which, as a practical matter, means that the fifth factor is almost never considered, *see*

*Nodak Mut. Ins. Co*, 604 N.W.2d at 96 ("Regarding the fifth factor, application of the better rule

of law, we note that this court has not placed any emphasis on this factor in nearly 20 years

. . . .").  The Court does not consider this factor, as the other factors are either neutral or point in

favor of applying the law of the jurisdiction in which each class member's property is located.

### f.  Conclusion

Both the second and fourth *Milkovich* factors weigh heavily in favor of not applying

Minnesota law to each claim.  The remaining factors are, at best, neutral.  As a result, even if the

unjust-enrichment claims against GTIA were not governed by the choice-of-law provisions in the

mortgage contracts, the Court would nevertheless apply the laws of the 50 states to those claims.

### 4.  Predominance

Because the Court would have to apply the laws of the 50 states to the unjust-enrichment

claims — whether by virtue of the choice-of-law clause in the mortgage contracts or by virtue of

application of the *Milkovich* factors — legal questions individual to class members would

substantially predominate over legal questions common to the class.  As the Court has already

explained, the laws of the 50 states differ substantially on many questions, including how

"unjust" the retention of a benefit must be for an unjust-enrichment claim to succeed; whether the defendant must have received the unjust benefit directly from the plaintiff; whether and to what extent the filed-rate doctrine precludes an unjust-enrichment claim; whether the applicable statute of limitations begins to run on occurrence or discovery of the injury; and whether and to what extent equitable tolling may save an unjust-enrichment claim that would otherwise be time barred.  Simply put, "the law of unjust enrichment varies too much from state to state to be amenable to national or even to multistate class treatment." *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. at 386.

Factual questions individual to class members would also predominate over factual questions common to the class as a whole.  For example, determining whether GTIA was unjustly enriched by any particular transaction will require determining "the cost of the insurance" for that transaction, since GTIA could be unjustly enriched at the expense of a class member only to the extent that the class member paid an amount that was greater than "the cost of the insurance."  Mortgage § 5.  And, as explained above, determining "the cost of the insurance" for any particular class member requires evidence specific to each class member.

Likewise, Rapp has acknowledged many times that "the cost of the insurance" charged to the class members could include a commission, as long as that commission was reasonable and actually earned.  This means that some of what was paid to GTIA could be found to be a legitimate commission while the rest could be found to be illegitimate.  But untangling legitimate commission from illegitimate kickback will depend on many factors, such as the regulatory regime governing insurance agencies in the relevant state and local practices regarding the payment of commissions.  For each class member, then, the factfinder would need to make an

individual determination of the amount of the commission that GTIA is entitled to keep and the amount that GTIA is required to disgorge.

These individual questions of law and fact would overwhelm questions common to the class as a whole.  For that reason, the Court cannot find that "the questions of law or fact common to class members predominate over any questions affecting only individual members," nor can the Court find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rapp's motion for class certification is therefore denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiff Jared Rapp's motion for class certification [ECF No. 111] is DENIED.

Dated:  August   5 , 2014                    s/Patrick J. Schiltz
                                             Patrick J. Schiltz
                                             United States District Judge